GEORGE J. THORNBURGH v. R. A. MASTIN et als.

*Abandonment—Tenants in Common—Taxation—Evidence.*

1. When the facts are admitted, whether or not a claim or equity has been abandoned, is a question of law; but when the facts are disputed, they must be submitted to a jury.

2. It is not error for a Judge not to charge the jury upon a point which counsel did not make at the trial.

3. When a jury correctly decides a question of law, incorrectly left to them by the Court, the verdict cures the error.

4. Where a party having an equitable title to land, remains in possession, no presumption can arise of abandonment of his equity.

5. Listing and paying taxes on land, is very slight, if any, evidence of title.

(*Dula* v. *Cole*, 7 Ired., 290 ; *Blake* v. *Lane*, 5 Ired. Eq., 412; *Brown* v. *Blacknall*, 5 Jones' Eq., 433 ; *Devereux* v. *Burgwyn*, 5 Ired. Eq., 351 ; *Headen* v. *Womack*, 88 N. C., 468 ; *Gant* v. *Hunsucker*, 12 Ired., 254 ; *Higdon* v. *Chastaine*, 1 Winst., 212 ; *State* v. *Cobham*, 1 Dev. & Bat., 374 ; *Glenn* v. *R. R. Co.*, 63 N. C., 510 ; *State* v. *Craton*, 6 Ired., 164 ; *Farmer* v. *Daniel*, 82 N. C., 152 ; *Nash* v. *Tillett*, 89 N. C., 423, cited and approved).

This was a CIVIL ACTION tried at Spring Term, 1885, of WILKES Superior Court, before *McKoy, Judge,* and a jury.

The plaintiff asks to enforce the specific performance of an alleged contract to convey the lands described in the complaint.

One Mastin executed to plaintiff a paper writing and receipt for $500 for the purchase money of the land, which is as follows :

" Received, April 21st, 1863, of George Thornburgh five hundred dollars, on account of the sale of my interest in the Lenoir lands owned by myself and J. W. Transon.

(Signed), W. MASTIN."

Mastin went into bankruptcy, and at his bankrupt sale J. H. Brown and James Calloway purchased from his assignee and took title therefor, and Isaac S. Call, one of the defendants, purchased the said land from said G. H. Brown and James Calloway, the purchasers at the assignee's sale. The present plaintiff instituted a bill in the court of equity at Spring Term, 1867, which was dismissed for the want of better security on the prosecution bond, at Spring Term, 1869, at which time he alleged, and offered proof to show that he was in possession of said lands.

The following issues were submitted to the jury :

1. Did Wm. Mastin contract in writing to convey by deed, in fee, the lands described?

Answer—"Yes."

2. Are the defendants the heirs-at-law of Wm. Mastin, deceased?

Answer—"Yes."

3. Did the plaintiff, George J. Thornburgh, pay to Wm. Mastin the purchase money according to the contract?

Answer—"Yes."

4. Did the plaintiff Thornburgh rescind and abandon his claim against the said Wm. Mastin under his contract of purchase?

Answer—"No."

5. Was the said land sued for in an action between plaintiff and William Mastin, and was there a judgment and decree, or retraxit, on the part of the plaintiff Thornburgh, in said suit?

Answer—"No."

There was evidence offered that for seven years after the date of the contract, and from 1877, up to the date of the summons in this cause, the plaintiff cultivated portions of the land or received rents for said land, while occupied by others.

Transon, a witness, testified, "that plaintiff had been in possession, he did not know how long. Thornburgh received rent after the trade with Mastin was made. It was while Mastin was living that Thornburgh got rent, and in the time of the war."

Plaintiff Thornburgh testified: "That he went into possession of the land in 1864, and cultivated it for seven or eight years; Transon, who owned one-half of the lands, agreed with me to divide the lands; I have had possession of it since five or six years ago; I had a cabin on it; I did not build the cabin; had it sowed year before last in rye; year before that I sowed wheat or rye, and then changed about; I rented it to Allen Hicks; Perkins built a house on the land; Transon, who owned an undivided interest, put Perkins there."

Irvin Reid testified: "I know Thornburgh tended the land in corn and grain; year before last I saw the land was sowed down in rye; Mastin told me during the war he had sold the land to Thornburgh for $500, and Thornburgh had paid him every cent of the money, and Thornburgh took possession of the land a year after that I saw him hauling off crops as much as twice after the war."

Thornburgh did not return this land for taxation. No evidence was introduced to show who had listed the lands for taxation.

During the argument, defendant insisted that Thornburgh not listing the lands for taxation, was strong evidence of Thornburgh's abandonment of his equity. Plaintiff insisted that there being no evidence, it was to be presumed that Transon, the other tenant in common, had listed the land for taxation.

The Court charged the jury that a presumption of abandonment of his equity would arise in ten years, and so far as lapse of time was concerned, it had arisen, if the jury should find that he had abandoned. And it was for the jury to say, whether he had abandoned his equity, or from the proof, had the plaintiff rebutted the presumption by acts of ownership, or acts showing that he exercised such control over the land, and had set forth his claims and asserted them, so as to rebut the presumption that he had abandoned his equity in the land. To this charge the defendant excepted.

The Court also charged the jury that when there were several tenants in common of land, either of them could give in land for taxation, and if given in by one, that is sufficient.

To this defendant excepted. There was a judgment for the plaintiff, and the defendant appealed.

*Messrs. Watson & Buxton* and *Batchelor & Devereux*, for the plaintiffs.

*Messrs. Coke & Williamson*, for the defendants.

ASHE, J., (after stating the facts). There were only two exceptions taken by the defendants. The first was to the charge of

the Judge in submitting the question of the abandonment of plaintiff's equity to the jury; and secondly, to his charge that when there are several tenants in common of land, that either of them could give in the land for taxation, and if given in by one, that is sufficient.

We are of the opinion there was no error in the charge given as to the abandonment of the equity, and if there was, it was cured by the verdict.

The defendants' counsel relied chiefly in support of his first exception, on the decisions in the cases of *Dula* v. *Cole*, 7 Ired., 290; *Blake* v. *Lane*, 5 Ired. Eq., 412; *Brown* v. *Blacknall*, 5 Jones' Eq., 423; *Devereux* v. *Burgwyn*, 5 Ired. Eq., 351; *Headen* v. *Womack*, 88 N. C., 468. In the latter case, the principle announced is, that the abandonment of a claim may become, and does become, *when the facts of the case are admitted, a conclusion of law from the facts, to be applied by the Court, and not left to the discretion of the jury.* But that case is distinguishable from this, for here the facts were not admitted, and there was some contradiction in the testimony as to the possession of the land by the plaintiff, and that was a question which was properly left to the jury.

In *Dula* v. *Cole, supra,* it was held that what amounts to an abandonment of a contract, so as to enable the opposite party to sue on the common counts in assumpsit for the value of a part performance, is a matter of law to be determined by the Court, and it was error to leave it to the jury. But that was a question as to the construction of a contract, and there was no controversy about the facts. The main fact upon which that case turned, was how the balance of the purchase money was to be paid, and the Court say, in the opinion, it was set out, *as admitted by the parties.* *Brown* v. *Blacknall,* *Blake* v. *Lane,* and *Devereux* v. *Burgwyn, supra,* are all old equity cases, in which the Court had to pass upon the law and facts.

The case of *Devereux* v. *Burgwyn,* and one or two other cases, were cited upon another point. The principle there decided was, that a right can only be lost or forfeited by such conduct as

would make it fraudulent and against conscience to assert it; as if one acts in such a manner as *intentionally* to make another believe that he has no right, or has abandoned it, and the other trusting to that belief, does an act which he would not otherwise have done, the fraudulent party will be restrained from asserting his right.

This case has no application to the one under consideration. For here there was no such defence set up in the answer, and if there had been, there was no issue upon that point tendered by the defendant, and no evidence to sustain such an issue, if it had been submitted. There was no exception upon that point in the Court below, and it cannot be taken here for the first time—*Gant* v. *Hunsucker*, 12 Ired., 254—and it cannot be assigned for error that the Judge did not charge the jury upon a point which the counsel did not make at the time. *Higdon* v. *Chastaine*, 1 Winst., 212; *State* v. *Cobham*, 1 Dev. & Bat., 374.

The purport of his Honor's charge was, that there was a presumption of the abandonment of the plaintiff's equity, unless from the proof, the plaintiff had rebutted the presumption by acts of ownership, or acts showing that he had exercised such control over the land, and had set forth his claims and asserted them, so as to rebut the presumption that he had abandoned his equity in the land.

Conceding that the abandonment of the equity was a question of law, and should not have been submitted to the jury, we still hold there was no error.

The issue submitted to the jury, upon which the controversy. turns in the case, was: "Did the plaintiff Thornburgh rescind and abandon his claim against the said Wm. Mastin, under his contract of purchase?" From the negative answer given by the jury to the issue, it must be inferred that they were satisfied with the correctness of the statement of the facts as deposed to by plaintiff's witnesses; which may be summed up as follows: That after the purchase of the interest of Wm. Mastin, in 1863, the plaintiff went into possession of the land, of which, in 1865 one

Transon was the owner of a moiety; that they agreed to divide the land, but never consummated the partition; that he cultivated it for seven or eight years; that he brought an action for specific performance of the contract against Wm. Mastin, in 1869, but the action was dismissed for the want of better security; that he held possession of a small part of the land, according to the testimony of Mrs. Mastin, and sowed wheat there after Mastin's death, which occurred in 1876; that he had had possession of the land for five or six years before the commencement of this action; that he had sowed rye and wheat there, alternately, up to the year preceding that in which this action was commenced, and had leased it to one Hicks; that one Perkins, under a contract of purchase from Mastin and Transon, which he soon abandoned, entered on the land in the lifetime of Mastin, built a ·cabin, and occupied it until about nine years before the institution of this action. The jury must have found these facts, for there was no conflicting testimony, except that of E. O. Mastin, who testified that he hauled off rent corn from there one or two years after the death of his father, rent probably paid by Perkins, but the record does not show by whom it was paid; and that of Mrs. Mastin who testified that the plaintiff was not in possession at all, to her knowledge, but there was a small lot he was in possession of after her husband's death, and he sowed wheat there, but made nothing. If his Honor had instructed the jury that if they should find the facts as above stated, they should then find that the presumption of abandonment was rebutted, there would have been no ground for the assignment of error. And there is none as it is, for the jury found, from the facts, as credited by them, that the plaintiff Thornburgh did not abandon his claim against Wm. Mastin, under his contract of purchase; and we are of the opinion the jury came to a correct conclusion of law from the facts of the case, and when a jury decides correctly a question of law, improperly submitted to them by the Court, the verdict cures the

error of the Court. *Glenn* v. *Charlotte and S. C. R. R. Co.*, 63 N. C., 510; *State* v. *Craton*, 6 Ired., 164.

We concur in the jury's conclusion of law, because the fact is made to appear that the plaintiff had had possession of the land almost continuously from 1865, when he took possession, until the commencement of the action—the only interval not accounted for is a year or two prior to the death of Mastin in 1876,—and it is held no presumption of abandonment or release can arise from lapse of time against parties who all the time stand upon their equitable title, and possess and use the property as their own. *Farmer* v. *Daniel*, 82 N. C., 152; *Nash* v. *Tillett*, 89 N. C., 423.

The defendant also excepted to what is set down in the statement of the case, as the Judge's charge, that when there are several tenants in common of land, that either of them could give in land for taxation; if given in by one, that is sufficient. And it was insisted, as there was no evidence that the co-tenant listed the land for taxation, that there was error. But the charge of a Judge is always taken with reference to the context, and it had been insisted by the defendant, as the tax book did not show that the plaintiff had listed the land, it was strong evidence that he had abandoned his equity—while on the other hand, the plaintiff insisted that it was to be presumed that Transon, the other tenant in common, had listed the land for taxation. The remarks of his Honor were made, we think, in reference to this contention between the parties, and were not intended, and could not have influenced the jury. For in view of the *facts* of the case upon which the conclusion of the jury was evidently predicated, it was immaterial who had listed the land. Any one supposing he has a claim upon the land of another, may list it and pay the taxes, but that would be very slight, if any, evidence tending to establish his title; for two or more persons may give in the land for taxation, which is sometimes done, each thinking that it in some way tends to strengthen his claim. The tax book did not show who had listed the land for taxation since the

plaintiff's bill was dismissed, but the plaintiff may have supposed, as he had only an equitable claim upon the land, it was the duty of the owner of the legal estate to list it for taxation.

There is no error. The judgment of the Superior Court is affirmed.

No error. Affirmed.