J. E. AUSTIN and wife v. J. E. KING.

*Evidence.—Tax-List.*

1. The facts that one of the parties listed the land in controversy for taxation, and paid the taxes assessed, *before there was any controversy about it*, and that the other did not, are admissible in evidence to be considered by the jury, with other evidence, tending to show the claim of title to, and possession of the land by the parties, and their acts and conduct towards it.

2. The tax-lists are admissible in evidence to show these facts.

(*Thornburg* v. *Mastin*, 93 N. C., 250, cited and commented on).

This was a CIVIL ACTION, tried before *Avery, Judge,* at February Term, 1886, of UNION Superior Court.

There was a verdict and judgment for the plaintiffs, from which the defendant appealed. The facts are sufficiently stated in the opinion of the Court.

*Mr. D. A. Covington,* for the plaintiffs.
*Mr. J. J. Vann,* for the defendant.

DAVIS, J.   The *feme* plaintiff claims under a deed from J. Morgan Rea to J. L. Rea, her ancestor, dated March 25th, 1857, and registered May 27th, 1880.   The plaintiff also offered in evidence a deed from J. L. Rea to J. Morgan Rea, dated October 18th, 1858, and registered September 9th, 1884.   It was admitted that both these deeds covered the land in question, and it was contended by the plaintiffs that the last named deed was in their possession at the commencement of this action, and was filed with the clerk of the Court for the inspection of the defendant, and while so in custody of the clerk, the defendant procured possession thereof, and had it registered without the sanction of the Court, and without the knowledge of the plaintiffs and against their will. They contend that this deed from J. L. Rea to J. Morgan Rea was surrendered by the latter to the former, for cancellation, before registration, for the purpose of revesting the title in the said J. L. Rea, and one of the issues submitted to the jury was:

"Did J. Morgan Rea surrender to J. L. Rea, the deed executed by J. L. Rea to J. Morgan Rea, for the land in controversy, for the purpose of annulling the said deed and revesting the title in said J. L. Rea?"

The defendant denies that the deed was surrendered for any such purpose, and claims:

1st. Under the said deed from J. L. Rea to J. Morgan Rea.

2d. Under the will of J. Morgan Rea, dated March 26th, 1859, by which the land in controversy was devised to the widow of the testator for life, with remainder to his two sons, James Rea and Pinkney Rea, and by *mesne* conveyances from said James and Pinkney Rea.

W. F. Rea, a son of J. Morgan Rea, testified, among other things, that in December, 1858, he was at his father's house, and J. L. Rea was there—that J. Morgan Rea and one Austin were looking over the papers of the said Morgan Rea, and while so engaged, J. L. Rea said to his father,

Morgan Rea: "There is that deed now," pointing to a deed among the papers; his father took up the deed and handed it to him and said, "here, that is yours." The next morning, in response to a question, J. Morgan Rea told the witness that J. L. Rea had had a difficulty and was about to go to Georgia, and in order to save his land, had conveyed the same to him (the father); that he had been to Georgia, had returned, fixed up his difficulty, and that he (the father) had, on the day before, surrendered the deed to his son, J. L. Rea.

There was other evidence tending to show that J. M. Rea had surrendered the deed to J. L. Rea.

The defendant, to sustain his contention that the deed from J. L. Rea to J. M. Rea was never surrendered by the latter to the former, with other evidence, proposed to offer the tax-lists of Union county, for the purpose of showing "that J. L. Rea returned for taxation for the year 1858, 107 acres of land, none for taxation for the year 1859; that J. M. Rea returned no part of the land in dispute for 1858, but in 1859 returned for taxation 180 acres," and they proposed further to show that the 107 acres was the land in dispute. "The plaintiff objected to this testimony, in so far as it related to J. M. Rea giving in said land for taxation, because it was a declaration in his own interest, and was therefore incompetent." This objection was sustained and the defendant excepted.

This is the first exception in the record, and presents the question: Was there error in excluding the tax-lists?

We have been unable, either by the aid of counsel or our own researches, to find any direct adjudication of the question in the Courts of this State. In *Thornburg* v. *Mastin*, 93 N. C., 258, the plaintiff was seeking to enforce the specific performance of a contract for the purchase of the interest of one Mastin in certain land owned by said Mastin and one Transon. The contract was made in 1863, and it was in-

sisted by the defendants (heirs of Mastin) that the plaintiff had abandoned his contract. It was in evidence, and, it seems, without objection, that Thornburg had not returned the land for taxation, but there was no evidence as to who had listed it. It was insisted for the defendants that the failure of Thornburg to list the land for taxation was strong evidence of the abandonment of his equity, and on the other side, the plaintiff insisted that as there was no evidence to show who had listed it, it was to be presumed that Transon (the other tenant in common) had done so. In that case, the Court charged the jury that where there were tenants in common of land, either of them could give it in for taxation, and if given in by either, it was sufficient. The defendant excepted to this charge, and on appeal, this Court sustained the Judge below. Judge ASHE said: "Any one supposing that he had a claim upon the land of another, may list it and pay the taxes, but that would be very slight, if any, evidence tending to establish his title; for two or more persons may give in the land for taxation, which is sometimes done, each thinking that it in some way tends to strengthen his claim. The tax-book did not show who had listed the land for taxation since the plaintiff's bill was dismissed, but the plaintiff may have supposed, as he had only an equitable claim upon the land, it was the duty of the owner of the legal estate to list it for taxation."

Such evidence may be of greater or less weight, according to circumstances; of this the jury must determine. The listing of land and paying taxes for supposed advantage, where there is controversy, would be of no weight, and if done, *post litem motam*, should be excluded. But where there is conflicting evidence as to what the purpose of the parties was, we can see no reason why the acts and conduct of each of them toward the subject-matter, at a time when there was no dispute, should not go to the jury to aid them in coming to a conclusion as to what that purpose was.

The fact that at a time when there was no controversy about the title—*ante litem motam*—A listed property for taxes, prior to a given period, and ceased to list it after that period, and B, claiming A's title, did not give it in prior to the period named, but did give it in subsequent to that period, is some evidence to show that B and not A became the owner, legal or equitable, after the change. It is not the *declaration*, but the *act* of the party; an independent circumstance, to be weighed by the jury.

"The books of assessment of public taxes are admissible to prove the assessment of the taxes upon the individuals, and of the property therein mentioned." 1 Greenleaf Ev., §493.

*Strode* v. *Seaton*, 2 Ad. & El. (reported in 29 Eng. Com. Law Reps., 62), was an action of ejectment, tried before Lord DENMAN, C. J., at the Bristol Assizes. The land tax assessments were offered in evidence, and it was objected to as inadmissible, but "the Lord Chief Justice received them, subject to the objection," and this ruling was sustained by the ruling of King's Bench. The Chief Justice, referring to the question of title involved in that case, said: "That depended upon a number of deeds, upon the assessments, and upon a great deal of other evidence, which was very largely discussed on both sides, and I think the verdict was correct."

In *Roukindorff* v. *Taylor's Lessee*, 4 Peters, 358, the taxbooks, regularly made up by the proper officers, were admitted as evidence. See also *Fletcher* v. *Fuller*, 120 U. S., 534.

When this case was before this Court, as reported in 91 N. C., 290, MERRIMON, Judge, referring to the evidence, said: "A slight fact may have turned the scale on the trial in favor of the defendant, so that it became important to exclude slight improper evidence on the one side or the other." It is of equal importance that no proper evidence, though it may be slight, should be excluded.

We think there was error in excluding the tax-lists, and this entitles the defendant to a new trial.

It is not necessary that we should consider the other exceptions presented in the record. There is error.

Error. *Venire de novo.*