W. B. FAULCON et al. v. S. JOHNSTON.

*Crops, title to, when produced by adverse claimant—Adverse possession, evidence of—Evidence, a deed or record as to third parties; oral, of contents of written instrument; of listing land for taxation, when competent; incompetent brought out without objection, or elicited on cross-examination.*

1. Crops produced on land by the labor of one in adverse possession under a claim of right, or his agents, belong to him, and are not the property of the rightful owner of the soil. Therefore, the owner of the soil cannot, under such circumstances, by waiving the tort, pursue and recover the specific articles thus raised, or their money value, from a stranger, who received them from the person in adverse possession of the land, or his tenants, and converted them to his own use.

2. The rightful owner of land sued A for the value of crops purchased by A from the tenant of B, who was in possession of the land: *Held*, that it was competent to show by such tenant that B claimed the land as his own while in possession of it: *Held, further*, that it was competent to put in evidence the record of an action of ejectment wherein the rightful owner had recovered the land from B, as such evidence tends to show that B's possession was adverse and under a claim of right.

3. A record, like a deed, is evidence against all the world to establish the fact that such a record exists, or such a judgment was rendered, and of all the legal consequences necessarily resulting from those facts.

4. The principle which requires the production of a writing, and excludes oral evidence to prove its contents, does not apply when the inquiry into the contents comes up *collaterally, at the trial*, and the contents of the instrument are not directly involved in the controversy.

5. The fact that the person in possession of land listed it for taxation in his own name, though of slight, if any, import as evidence of title, is receivable as showing a claim of ownership. for the reason that it is an act done in pursuance of the requirements of law.

6. It is not admissible for counsel to be quiet and allow evidence to come out and take advantage of it, if favorable, and if not. to ask that it be stricken out and not considered. Still less can he complain when it comes out in response to his own inquiries. Therefore, it lies in the unreviewable discretion of the presiding Judge to refuse to exclude incompetent testimony called out on cross-examination by the party who seeks to have it excluded.

This was a CIVIL ACTION, tried before *Graves, J*, at March Term, 1888, of Superior Court of HALIFAX County.

There was a verdict of the jury and a judgment in favor of the defendant, from which judgment the plaintiffs appealed.

The facts appear in the opinion.

*Messrs. J B. Batchelor* and *John Devereux, Jr.*, for the plaintiffs.

*Messrs. W. H. Day* and *R. O. Burton, Jr.*, for the defendant.

SMITH, C. J. This action, begun on December 29, 1886, in the Superior Court of Halifax, is prosecuted by the surviving devisee and administrators of two devisees, claiming under the will of Isaac N. Faulcon, to recover moneys received by the defendant during several years, as rent alleged to be due the plaintiffs for the use and occupation of the devised lands, paid by tenants thereon to him. The defendant, not denying his receiving said moneys, in answer to the charge of his being responsible to account with the plaintiff therefor, says that the said land, during this inter-

val of time when rents were paid, was in the adverse possession of one James A. Faulcon, who, claiming to be the owner, leased parts of the premises to the different occupying tenants to whom the defendants furnished agricultural supplies in carrying on farm operations, and that rent notes taken by the lessor were handed over to defendant to secure the advances, which notes he collected and so applied the pro-ceeds.

IIe further says that the said James A. Faulcon remained in possession and control of the said lands till the first of September, 1885, undisturbed, when suit was instituted, by those deriving title under the will, to recover possession, which, at November Term of the Superior Court following, terminated in a judgment in their favor, and under it possession was acquired.

The only issue extracted from the pleadings, and passed on by the jury, is in these words: " Did the defendants receive money or rents belonging to the plaintiffs, and if so, how much ?" It was answered in the negative. · Whereupon, judgment was rendered for the defendant, and the plaintiff appealed.

The plaintiffs introduced two contracts of letting, made by the testator Isaac N., on January 1, 1878, one to John Young and the other to John Faulcon, of parts of the land in contest, for four years, each writing declaring it to be the same land the lessees had rented for the two preceding years, and both lessees testified to having cultivated the land during the time, and paid the rent, seventy dollars a year, to the defendant.

The lessee John Young, having testified to his having paid the rents due from him to the defendant, was asked on cross-examination why he did so, and answered because he was told by James Faulcon to pay the rent to defendant. Again, he was asked by defendant if James Faulcon claimed the land, and in reply witness said he did claim it. These inquiries and the responses were admitted after objection of plaintiffs.

In our opinion, the testimony was competent as explanatory of his act in making that payment of the rent, and under a demand, as an assertion and exercise of a claim of ownership in James Faulcon recognized by the witness.

A similar inquiry made of the lessee John Faulcon met with a similar objection, and was disposed of by a similar ruling.

The defendant offered, in order to prove an adverse occupancy of the land by James A. Faulcon, the record of an action brought against him by Walter B. Faulcon, Alice B. and Thomas C. Williams, who, except said Alice B., whose administrator is a party in her stead, prosecute the present suit, to recover possession of the land in the alleged wrongful possession of said James A., and for damages for the detention, a judgment rendered by default, and also an award of a writ of possession at Fall Term, 1885, of Halifax Superior Court.

This documentary evidence, after objection to its admission made and overruled, was allowed to go to the jury.

The defence arises out of the want of any privity between the plaintiffs and defendant from which could be implied a promise to pay money had and recevied to the plaintiffs' use, and the existence of adverse relations in respect to the property between the plaintiffs and the said James Faulcon, who assumed control over the rents and directed their payment to the defendant, for agricultural advances to the tenants. To this evidence we can see no just grounds of objection· The record is competent proof of all such facts as result from its existence as such, and of the adversary relations of the parties to it.

" A deed," says GASTON, J. (and the remark is equally applicable to an adjudication of record), " is evidence against all the world to establish the fact that such a deed was executed" (or of a judgment rendered), " and of course of all

the legal consequences necessarily resulting from that fact."
*Claywell* v. *McGinsey*, 4 Dev., 89.

So, the production of the transcript shows that there was
an action successfully prosecuted to recover possession
from the said James Faulcon, who assumed to hold the
same.   Besides, it was under the authority and by direction
·of the latter that the defendant received the rent moneys.

The defendant, on his own behalf, delivered testimony to
which numerous objections were made during the course of
the examination :

1. The witness was permitted, after objection, to say :
" James Faulcon placed the notes in my hands for supplies;
sometimes he gave me statement in writing; I either had
notes or he gave me written statements authorizing me to col-
lect of different tenants; James had the control; Walter and
his sister (the devisees) lived six or seven miles from War-
renton; I frequently saw plaintiffs, and had business trans-
actions with them; they never made any demand or claim;
James Faulcon's wife lived a mile and a half from the part
claimed by Walter."

A part of the objection now preferred has been already
answered, in upholding the competency of evidence to show
under what circumstances the rent money went into the
defendant's hands.

The further objection, that the writings referred to should
have been produced, or their absence accounted for, before
letting in parol proof of their contents, is removed by the
rulings in *Pollock* v. *Wilcox*, 68 N. C., 46; *State* v. *Carter*, 72
N. C., 99; *Carrington* v. *Allen*, 87 N. C., 354, and *State* v. *Wil-
kerson*, 98 N. C., 696, in which it is held that the principle that
requires the production of a writing to prove its contents does
not apply, when the inquiry into its contents comes up *collater-
ally at the trial*, and are not directly involved in the controversy.

2. The next objection is to his testifying . to the fact that
James Faulcon listed the land for the purpose of taxation.

The fact appearing previous to 1885, *ante litem motam*, though of slight if of any import as evidence of title, is, in our opinion, receivable as showing a claim of ownership, for the reason that it is an act done in pursuance of the requirements of law. *Austin* v. *King*, 97 N. C , 339.

3. Upon the cross-examination of defendant this testimony was elicited : " I have seen the will of Isaac N.; James Faulcon denied the title of plaintiff; I knew that something had been given in the will to James; I knew that the crops from which I received the rents grew on this land he controlled;. I had transactions with the tenants; I do not know that I ever saw him turn out a tenant and put another in; I knew that he took notes from them; we lived in the same neighborhood; I never heard him make any bargain to rent, that I remember; I have been through the land with him once."

The plaintiffs asked that so much of this evidence as indicated the control of James Faulcon over the land be withdrawn from the jury. This was denied, the Court being of opinion that its value as evidence was for the jury, and was not rendered incompetent because drawn out on the cross-examination. Plaintiffs excepted.

The exception is not very plainly presented. The objectionable matter is stated to be elicited upon the cross-examination of the witness, the defendant himself, by interrogations put by the plaintiffs. The answer, thus voluntarily brought out by the plaintiffs, could not be a subject of exception from them, and its withdrawal afterwards from the jury rested in the sound discretion of the Court, is a matter not reviewable in this Court.

As is said in *McRae* v. *Malloy*, 93 N. C., 154, " it is not admissible for counsel to be quiet and allow the evidence to come out and take advantage of it, if favorable, and if not, to ask that it be stricken out and not considered." Still less can he complain when it comes out in response to his own inquiries. *State* v. *Efler*, 85 N. C., 585.

4. On the re-direct examination the defendant's counsel put this interrogation to him : " You stated in reply to the question by plaintiffs, that you had seen the will; did you make inquiry into the matter?" The witness was allowed, after objection, to say : " We could find no evidence of title in Isaac N. Faulcon."

The substance of the declaration was, that the witness did not discover any evidence of title in the testator, under whom the plaintiffs claim.

We can see no prejudicial effect in the answer, since, as between the plaintiffs and James Faulcon, the title of the former is adjudged in the possessory action; and, it is, at most, but a negation of a successful search—not disproof of title.

5. The defendant was then allowed to prove a sale of the land, as the property of Isaac N., by the Marshal of the United States, under an execution against him, and the Marshal's deed therefor to Faulcon Brown, and from the latter a reconveyance to the said Isaac N. This latter deed was admitted, to show the time of its registration, and was read to the jury.

This was objected to, but we are unable to see any sufficient reason for the objection, as the entire proceedings relate to the plaintiffs' ancestor, and precede his devise to them, his grandchildren.

There were many instructions, fourteen in number, asked for defendant, as follows :

" 1. Every possession of real property is presumed by law to be a title in fee simple, and it being proved by both plaintiffs and defendant that Isaac N. Faulcon was in possession of the land at the time of his death, there is no evidence before the jury to show that Isaac N. Faulcon was not the owner of the land, and the jury must find that he was."

This was not given by the Court, because the title to the land was not involved, and plaintiffs excepted.

" 2. There being no evidence impeaching I. N. Faulcon's title, the land went by his will to his grandchildren, and the jury must so consider it in making up their verdict."

This was refused, because the jury were told the title to the land was not involved in the issue. This was not given, and plaintiffs excepted.

" 3. If John Young entered upon the land under the contract between him and I. N. Faulcon, which was proved, and which was for lease of four years, and continued in possession after death of said Isaac N., then John Young was tenant of the plaintiffs, and they were his landlord, and that tenancy continued as long as the tenant (John Young) remained on the land, and he could not, in law, enter into a contract with James A. Faulcon which would make the possession adverse as to his landlord."

The Court is of the opinion that this instruction was given in substance in the charge to the jury, as hereinafter stated. The plaintiffs except, because they allege that it was not given as asked.

" 4. If the jury are satisfied that John Young made the contract with I. N. Faulcon and continued on the land after his death, there is no evidence to show that there was any possession adverse to the plaintiffs."

The Court refused to give this instruction, and plaintiffs excepted.

" 5. If John Young made the contract with I. N. Faulcon, and entered into possession, and continued in possession after his death, then the plaintiffs are entitled to recover from the defendant all that he received from John Young on account of the rent of the land."

The Court refused to give this instruction, and plaintiffs excepted.

" 6. The same instructions were asked as to the part of the land rented and cultivated by John Faulcon, and were disposed of in the same way."

" 7. If William Faulcon rented and entered upon the land as the tenant of Isaac N. Faulcon, and continued in possession after his death, then the relation of landlord and tenant was constituted between Wm. Faulcon and the plaintiff, and continued as long as Wm. Faulcon continued to occupy the land, and no arrangement between him and James A Faulcon could change this relation."

The Court is of the opinion that this instruction was given in substance. The plaintiffs are of the opinion that it was not, and, therefore, except.

" 8. If this relation existed between Wm. Faulcon and plaintiffs, then the plaintiffs are entitled to recover of the defendant all that he received of Wm. Faulcon on account of such tenancy."

The Court is of the opinion that this instruction was refused in part, and given in part, in the charge, as stated below. The plaintiffs except, because, as they allege, the instruction was not given as requested.

" 9. The same instructions were asked as to Matt. Faulcon, and were disposed of in the same way.

"10. If William Faulcon made the contract with Walter Faulcon, for himself and his sisters, to lease the land for five years, and occupied it during all that time, as it was testified to that he did, and paid the rents to the defendant, then William Faulcon became the tenant of the plaintiffs, and they are entitled to recover, of the defendant, all that was received by him from Wm. Faulcon, on account of such contract of renting."

This instruction was refused in part, and, the Court is of the opinion, given in part, in the instructions given below. Plaintiffs excepted.

"11. If the plaintiffs became the owners of the land under the devise in the will of the said Isaac N. Faulcon, and then James A. Faulcon attempted to rent out the land, and to assign the rents to the defendant Johnston, and Johnston

then collected the rents under this assignment, Johnston, the defendant, thereby became a constructive trespasser, and the plaintiffs are entitled to recover from him damages for such unlawful entries, and the amount received by Johnston is the measure of such damages ; or the jury may regard the amount thus received as the measure of such damages, and render a verdict for the amount, with interest."

This instruction was refused by the Court, and the plaintiffs excepted.

" 12. That the acts and conduct of Walter Faulcon are · not in law an estoppel."

The opinion of the Court is, that this is given in part, and refused in part, in the charge of the Court as given hereinafter. The plaintiffs except, on the ground that the instruction was not given as requested.

" 13. That the jury cannot consider the deeds to Brown and from Brown to Faulcon as affecting the rights of plaintiffs to this land, or in any way affecting their right of recovery. It was admitted only for the purpose of the date of its registration, and for no other purpose, and the Court is requested to instruct the jury that they can consider it for no other purpose."

The Court thinks that this instruction was given in substance in the charge, as stated below. The plaintiffs except, on the ground that it was not given. These general instructions are asked, subject, of course, to proper instructions as to the statute of limitations.

" 14. Two of intestates of plaintiffs being infants, and one becoming covert during infancy, the statute of limitations cannot apply as to these two in any view of the case. If it applies at all to Walter B. Faulcon, the adult, it cannot apply to the three years next before the bringing of the action of ejectment ; for these three years he can certainly recover."

102—18

The counsel for defendant conceded that the statute of limitations was not a bar to any of plaintiffs except W. B. Faulcon, and the Court so told the jury.

And, therefore, the Court charged the jury as follows:

" The title to the land is not at issue in this action. As between James Faulcon and those claiming under him, the title is adjudged in the plaintiffs.

" It is an established rule that a tenant cannot deny the title of the landlord, and the relation of landlord and tenant being once established, the tenant cannot change this relation until he surrenders the possession of the land, which he received from his landlord, back to him, and no contract with another can change that relation so long as the tenant remains in possession. If the relation of landlord and tenant existed between Isaac N. Faulcon, John S. Young, John Faulcon, William Faulcon and Matt. Faulcon, at the time of the death of Isaac N. Faulcon, and if Isaac N. Faulcon duly made and published his last will and testament, and if that will was duly executed, and if the will was in the words read in evidence, it conveyed to the plaintiffs Walter and his sisters, children of Jesse N. Faulcon, the interest of Isaac N. Faulcon, and the tenants of Isaac N. Faulcon became the tenants of the said Walter Faulcon and his sisters, and they would be entitled to receive the rents from the tenants, and if the defendant received the rents from the tenants of plaintiff, then he would be liable, unless exonerated from such liability by some other principle or rule of law."

Plaintiffs except to the foregoing charge of the Court.

" But if the land was in the adverse possession of James A. Faulcon, he being in the adverse possession of the land, claiming it as his own, and he—being in such adverse possession—caused the annual produce of the land, produced by annual planting and culture, to be taken from the land to the defendant, and the defendant took it in payment of debts due from James A. Faulcon for supplies, or otherwise

due, then the.defendant would not be liable for the products of the land delivered in kind, or sold and the money paid to him."

To this part of the charge plaintiffs except.

"It then becomes material for you to determine the nature of the possession of James A. Faulcon. If he was occupying the land, claiming it as his own, denying the rights of the plaintiffs, the plaintiffs cannot recover of the defendant, although the land did, in fact, belong to the plaintiffs."

To this instruction the plaintiffs except. And the plaintiffs further except to.the three preceding paragraphs of the charge taken together.

"If James A. Faulcon was not in adverse possession, but took possession of the land as the agent of the plaintiffs, and he misapplied the rents, and paid them to Johnston, and Johnston, knowing that James A. Faulcon was using the rents of the plaintiffs' land by delivering the notes as collateral security for supplies, then he would be liable for the amount received, if he knew of the relation, unless something more is shown. And if the plaintiff Walter Faulcon knew that James A. Faulcon was disposing of the rents, claiming to act as agent of plaintiffs, and he allowed this to go on with his knowledge, and acquiesced, or by his conduct led the defendant to reasonably believe he acquiesced in such disposition, then he would not be entitled to recover for such rents so disposed of to the defendant; but as to the other plaintiffs, they, being under disability, would not be estopped."

Plaintiff Walter Faulcon excepts to this charge in his own behalf. Other plaintiffs also except thereto.

"Now, in regard to the statute of limitations. The cause of action, if there is any cause of action, accrued at the time the rent was received wrongfully by defendant; a right of action accrued, if any cause of action accrued, at the annual receipts of the rents. The plaintiff Walter Faulcon cannot,

under the evidence, recover, in his own right, anything for his part of rent for any more than three years before the beginning of this suit. The statute of limitations does not bar the other plaintiffs."

To this charge the plaintiffs, except Walter Faulcon in his own right, except.

The Court gave to the jury, orally, careful instructions as to the issues and the evidence bearing upon them, and told the jury if the first issue should be found for the defendant the other issues became immaterial. No exception was made to any except such as were in writing.

After the verdict, the plaintiffs moved for a new trial. Motion overruled. Judgment for defendant, and plaintiffs appealed to the Supreme Court.

Without revising and comparing the directions asked by appellants to be given to the jury and those given by the Court, in order to ascertain if there are any such omissions or variations as might furnish some grounds for complaint, we are content with the single remark, that if correct in themselves, the charge seems to cover the whole matter in dispute, and leaves little cause for the appeal.

The solution of the controverted question of their right to recover the rents received by the defendant, under the circumstances, rests upon the correctness of the concluding paragraphs of the charge preceding what is said in relation to the statute of limitations, to-wit: that if James A. Faulcon was in the occupancy of the land, claiming it as his own, and denying the rights of the plaintiffs, although the land was in law their property, they cannot recover the rents sued for, as moneys received to their use, in this action.

The question is this: Can the owner of the land in the adverse possession of another assert title to the crops grown thereon during such occupancy, and in its assertion, by waiving the tort, pursue and recover the specific articles thus

raised, or their money value, in the hands of a stranger who may have received and converted them to his own use, or the rent money paid him by the tenants?

The cases cited in the argument conclusively establish the proposition that the crops, the product of the labor of the trespassing possessor and his agents, belong to him, and are not the property of the owner of the soil.

In *Brothers* v. *Hurdle*, 10 Ired., 490, the defendant, lessor of the plaintiff in ejectment, recovered of the plaintiff the land upon which were gathered the growing crops, the product of the year's cultivation, and being put in possession by the Sheriff, took control of the crops and applied them to his own use. The action was in trover to recover their value.

Delivering the opinion, PEARSON, J., says: "The corn, &c., which was attached to the land at the time the defendant was put in possession, passed with it and belonged to him. But the fodder, &c., which had been severed, although on the premises, did not pass with the land, for it had ceased to be a part thereof, and the defendant had no right to take it. His remedy was an action, not for the specific articles, but for damages by way of *mesne* profits. If the defendant had a right to take the *specific articles*, he would, for the same reason, be entitled to recover their value, in trover, against the plaintiff or any one to whom he might have sold them." The same reasoning was applied to turpentine run into boxes cut in the body of the tree, the product of labor, in *Branch* v. *Morrison*, 5 Jon., 16, and when the case was again before the Court, reported in 6 Jon., 16.

A similar ruling, and in affirmation of that in *Brothers* v. *Hurdle, supra*, was made in the later case of *Ray* v. *Gardner*, 82 N. C., 454. If, then, James Faulcon was in the hostile occupation of the land when the crops were made by the several tenants, the crops did not in law belong to the plaintiffs, and the defendant, in taking and converting them to

his own use, did not become liable to the plaintiffs, because they were not the property of the plaintiffs.

The principle that the owner of goods wrongfully seized and sold may waive the tort and ratify the sale, and recover the proceeds from the purchaser, has no application to the present case.

The jury having, by their verdict, established these adverse relations, and there being no error in the instructions leading thereto, the judgment must be and is affirmed.

No error.                                    Affirmed.