M. L. CABLE v. SOUTHERN RAILWAY COMPANY.

(Decided March 15, 1898).

*Action for Damages—Appeal—Practice—Railroads— Injuries to Passenger—Passenger Alighting from Train—Negligence—Contributory Negligence.*

1. The burden of showing the negligence being upon the plaintiff in the trial of an action for damages resulting from the alleged negligence of the defendant, the Court may properly direct a verdict in favor of the defendant, when there is not any, or only a scintilla, of evidence tending to prove the negligence of the defendant.

2. Where judgment of non-suit is entered against a plaintiff at the close of his evidence, only his evidence and so much of the defendant's as is most favorable to the plaintiff will be considered on appeal and both must be considered in the light most favorable to him.

3. Where, on the trial of an action for damages for injuries caused by the alleged negligence of defendant railroad company, it appeared by the plaintiff's evidence that the defendant's train on which plaintiff was a passenger, did not stop at the Station to which he had paid his fare and when he saw the conductor the latter said he had forgotten him and suggested that he should jump off the train as it was going slow, which plaintiff refused to do; and that the conductor then agreed that he would slow up the train at a safe place for plaintiff to alight and plaintiff consented to jump off and went upon the platform as the train slowed up but seeing a "go ahead" signal from the rear did not step off for that reason; that then, feeling the increased motion of the train, he stepped off believing he was at a safe place and relying upon the conductor's promise to put him off at a safe place, and was injured; *Held,* that the evidence of the defendant's negligence was sufficient to be submitted to the jury.

4. In determining whether the plaintiff's evidence is sufficient to be submitted to a jury the Court cannot consider the defendant's rebutting evidence no matter how strong in contradiction, for that would be to compare the conflicting evidence and determine its relative weight which is solely within the province of the jury.

5. No matter how strong and uncontradictory is the evidence in support of an issue as to contributory negligence, the Court cannot withdraw such issue from the jury and direct an affirmative finding.

6. Under the well settled rules of law, and plainly under Section 1963 of *The Code,* a railroad company is liable for nominal damages for its negligence in failing to stop its train at and conveying a passenger beyond the destination to which he has paid his fare, it being a regular station on the line.

7. The Court does not favor the growing practice of taking cases from the consideration of the jury; and when there is any more than a scintilla of evidence or any reasonable doubt as to the sufficiency of evidence on the part of the side upon which rests the burden, it is proper and certainly safer to leave to the jury the exclusive determination of the facts.

CIVIL ACTION for damages tried before *McIver, J.,* and a jury at August Term, 1897, of GUILFORD Superior Court. The facts are stated in the opinion. After all the evidence had been offered and argument had commenced, his Honor stated that he would charge the jury that the plaintiff, on his own testimony, could not re-

cover; whereupon the plaintiff submitted to a non-suit and appealed.

*Messrs. C. M. Stedman, R. R. King* and *Schenck & Schenck* for plaintiff (appellant).
*Mr. F. H. Busbee* for defendant.

DOUGLAS, J.: This is an action brought by the plaintiff to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The plaintiff, a passenger on defendant's train, was carried past his destination and was injured by stepping off the train, while in motion, by the direction of the conductor, as alleged. After the close of the testimony, the Court below refused all prayers for instruction offered by the plaintiff, and "stated that he would charge the jury that the plaintiff on his own testimony was not entitled to recover. Whereupon, the plaintiff submitted to a non-suit and appealed." This brings before us the single question whether there was sufficient evidence to go to the jury as to the negligence of the defendant. As upon this issue the burden was upon the plaintiff, the Court might properly have directed a verdict in favor of the defendant, provided there was no evidence or nothing more than a mere scintilla tending to prove the negligence of the defendant. *Wittkowsky* v. *Wasson*, 71 N. C., 451; *Spruill* v. *Ins. Co.*, 120 N. C., 141. In the absence of such negligence the plaintiff could not recover. This brings us to a consideration of the evidence.

In the present status of this case we can consider only the evidence of the plaintiff and such of the defendant's evidence as is favorable to him, and must construe both in the light most favorable to the plaintiff. *Abernathy*

v. *Stowe*, 92 N. C., 213; *Gibbs* v. *Lyon*, 95 N. C., 146; *Hodges* v. *R. R. Co.*, 120 N. C., 555; *Collins* v. ·*Swanson*, 121 N. C., 67. In *Springs* v. *Schenck*, 99 N. C., 551, at page 555, this Court says: "As the Court in effect intimated on the trial that in no reasonable view of the evidence could the appellant recover, it must for the present purpose be accepted as *true, and taken in the most favorable light for him, because the jury might have taken that view of it, if it had been submitted to them.* In *State* v. *Allen*, 48 N. C., 257, at page 268, Chief Justice Pearson speaking for the Court says: "In the case now under consideration the Judge withdrew the facts from the jury and instructed them that if the testimony was believed it was a case of murder, and there was no evidence of a legal provocation. So the prisoner has the right to insist that the testimony should be taken *in the point of view most favorable to him;* and that if, in *any* aspect, the evidence is consistent with his being guilty of manslaughter only, there was error in the manner in which the case was put to the jury"— citing *Avera* v. *Sexton*, 35 N. C., 247, and *Hathaway* v. *Hinton*, 46 N. C., 243.

Among other things the plaintiff testified that he got on the train at Stokesland and paid his fair to Benaja, his destination; that the train did not stop at Benaja, and that as soon as he saw it was not going to stop he went back to see the conductor and found him in the first class car. The plaintiff further testified as follows: "He, (the conductor) jumped up and remarked that he had forgotten me, that he had to meet a train at Benaja, but at the same time he remarked that he was on a hill and could not stop, and suggested that I jump from the train as it was running slow. I refused. He suggested again that I jump, and I refused. He said he would

slow up at the top of the hill, *which was a safe place.*
I took him at his advice.   As the train slowed up,
about as fast as a man could walk, I went out on the
platform.   I saw a signal at the rear end of the train;
it was a signal to go ahead.   I did not step off the train
because I saw the lantern moving.   At the same time I
felt the increased motion of the train.   I stepped off
the train, thinking I was at a safe place.   .   .   .   I be-
lieved it to be a perfectly safe place.   In fact the con-
ductor had told me he would slow up at a safe place for
me to get off .   .   .   .   When he first told me to jump
off, the train was not making less than 15 miles an
hour—as fast as it could go up hill .   .   . The conductor
told me that he would slow up at a safe place on the
top of the hill and for me to get off when the train
slowed up.   I relied on his picking a safe place for me
to get off.   I got off when the train became very slow
—I suppose not faster than a man could walk, probably
not so fast." The plaintiff also testified as to his injuries,
loss of income and other matters.

Taken in its most favorable light, this evidence was
unquestionably sufficient to go to the jury.   The Court
could not consider the rebutting evidence of the defend-
ant, no matter how strong in contradiction, because
that would be to *compare* the conflicting evidence and
determine its relative *weight.*   This can never be done
by the Court, as it is within the exclusive province of
the jury.   *State* v. *Shule,* 32 N. C., 153; *State* v. *Allen,*
*supra; Wittkowsky* v. *Wasson* and *Spruill* v. *Ins. Co.,*
*supra,* and cases cited therein; *Hardison* v. *Railroad,*
120 N. C., 492; *Bank* v. *School Comm.,* 121 N. C., 107;
*White* v. *Railroad,* Ibid 484, at page 489.

We have assumed that his Honor intended to charge
the jury that there was no evidence tending to prove

negligence on the part of the defendant; since, if the defendant's negligence were proved or admitted, under no circumstances could the court find as an affirmative fact that there was contributory negligence. Contributory negligence is a plea in bar, the burden of which always rests upon the defendant, both as to allegation and proof. Any doubt that may have existed as to its character is now settled by Chapter 33 of the Laws of 1887, which provides "that in all actions to recover damages by reason of the negligence of the defendant, where contributory negligence is relied upon as a defence, it shall be set up in the answer and *proved* on the trial." In *Hardison* v. *Railroad*, 120 N. C., 492, at page 494, which was an action for the killing of stock where Section 2326 of *The Code* made a *prima facie* case of negligence against the defendant, the court says: "Under this statute, as we understand it, at the close of the plaintiff's (if the defendant had introduced no evidence) it would have been the duty of the court in instructing the jury to find the first issue for the plaintiff. But as the defendant introduced evidence tending to show there was no negligence on the part of the defendant in killing the cow—that is, to rebut the presumption, or *prima facie* case of the plaintiff—it then became an issue of fact, which *could not have been found by the Court and should have been left to the jury.*"

In *Bank* v. *School Committee*, 121 N. C., 107, 109, this court says: "But no matter how strong and uncontradictory the evidence is in support of the issue, the court cannot withdraw such issue from the jury and direct an affirmative finding. To do this is to violate the Act of 1796—Section 413 of *The Code.*" In *White*

v. *Railroad,* 121 N. C., 484, 489, this Court says: "The Court can never find nor direct an affirmative finding of the jury"—citing *State* v. *Shule,* 32 N. C., 153. This doctrine is also affirmed in *Spruill* v. *Ins. Co.,* and *Collins* v. *Swanson, supra,* and in *Eller* v. *Church,* 121 N. C., 269—all recent cases. In the United States Courts, in which the Judges are permitted to express an opinion upon the facts, it is held that the court may under certain circumstances find contributory negligence, but the following quotations from a long line of cases will show how strictly the rule is guarded: "The court proceeded upon the ground that contributory negligence upon the part of the plaintiff was so conclusively established that it would have been compelled in the exercise of a sound judicial discretion to set aside any verdict returned in his favor. If the evidence, giving the plaintiff every benefit of every inference to be fairly drawn from it, sustained his view, then the direction to find for the defendant was proper." *Kane* v. *Railroad,* 128 U. S., 91, 94. "It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." *Railroad Co.* v. *Ives,* 144 U. S., 427. "In determining whether the plaintiff was so guilty of contributory negligence as to entitle the defendant to a verdict, we are bound to put upon the testimony the construction most favorable to him." *Chicago, etc. R. Co.* v. *Lowell,* 151 U. S., 209, 217.

The inference from the facts must be "so plain as to be a legal conclusion" before the question can be withdrawn from the jury. *Railroad Co.* v. *Egeland,* 163 U. S., 93, 98. "We see no reason, as long as the jury system is the law of the land and the jury is made the

tribunal to decide disputed questions of fact, why it should not decide such questions as these (negligence and contributory negligence) as well as others." *Jones* v. *Ry. Co.*, 128 U. S., 443, 445. The court erred in not submitting the question of contributory negligence to the jury, as the conclusion did not follow *as matter* of *law* that no recovery could be had upon any view which could be properly taken of the facts the evidence tended to establish." *Dunlap* v. *N. E. Ry. Co.*, 130 U. S. 652. In *N. P. Railroad Co.*, v. *Egeland, supra*, where the plaintiff, a laborer in the employ of the defendant, was ordered by the conductor to jump off a train going about 4 miles an hour and was injured in doing so, the court says: "If plaintiff reasonably thought he could with safety obey the order by taking care and jumping carefully and if because of the order he did jump, the jury ought to be at liberty to say whether under such circumstances he was or was not guilty of negligence."

There is another point in the case at bar on which the plaintiff was clearly entitled to go to the jury. He testified without contradiction that he was on the train as a passenger, had paid his fare to Benaja, a regular station of the defendant company, and was carried beyond his destination by the failure of the conductor to stop his train. This of itself was negligence on the part of the defendant and entitled the plaintiff to at least nominal damages. This is a well settled rule of law, even in the absence of a local statute. Fetter Carriers of Passengers, Section 66 and 300, and cases therein cited; Schouler Bailments and Carriers, Section 661; Thompson on Carriers of Passengers, p. 581; Hutchinson on Carriers, Sections 612 and 614; Am. & Eng. Enc. of Law, pp. 565, 566, 572 and notes thereunder. In

this State the liability is directly imposed by statute. *The Code,* Section 1963, provides that "Every railroad corporation shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice, and shall furnish sufficient accommodation for the transportation of all such passengers and property as shall within a reasonable time previous thereto be offered for transportation at the place of starting, and the junction of other railroads, and at *usual* stopping places established for receiving and discharging way passengers and freights for that train, and shall take, transport and *discharge* such passengers and property at, from and *to* such places on due payment of the freight or fare legally authorized therefor, and shall be *liable* to the party aggrieved in an action for damages for any neglect or refusal in the premises." As to the *quantum* of damages, the rule may be found in *Purcell* v. *Railroad,* 108 N. C., 414 and in *Hansley* v. *Railroad,* 117 N. C., 565.

This Court does not favor the growing practice of taking cases from the jury. The jury is a constitutional body, as much so as the court itself, and, in the exercise of its peculiar powers, of equal responsibility and independence. Its members are selected on account of their peculiar fitness from the body of the people and by the lawful officers of the people. Any of its members can be challenged by any part for cause, and to a certain extent peremptorily at the will of the objector. They represent the average intelligence and virtue of our people, and we cannot discredit them without at the same time reflecting upon the controlling element of our State. They may not possess the high order of intelligence and cultivation required of the Judge, but as an average they do possess that common sense which

gives a clearer insight into the motives and conduct of men, and is better fitted to deal with the ordinary affairs of life, than the highest order of intellectual brilliancy. We should remember that our organic law is not the product of John Locke, but is the outgrowth of the practical wisdom and experience of the hardy frontiersmen for whom he attempted in vain to legislate. The number of the jury is large, and they are required to render a unanimous verdict, because it is the *consensus* of their *average* judgment that the law seeks as the safest protection against prejudice and oppression. It is true that some of the "advanced thinkers" of the day attack the jury system as a cumbersome relic of the ignorance of the past; but in spite of their criticisms it is not only imbedded in our organic law but remains of the very warp and woof of the jurisprudence of the two great English speaking nations who to-day hold the world in awe. In the large majority of cases where the Court directs a verdict, if the matter were left to them under proper instructions, the jury would render a verdict in accordance with the views of the court, and that would be an end of the case. But, even if the jury should render a verdict against the weight of the evidence, no harm would be done beyond a brief delay, as the court could in its discretion set aside any verdict other than that of acquittal on a criminal charge. It would involve no greater responsibility to set aside a verdict than to direct one, and it is certainly more in accordance with the policy of our laws to recommit the case to a jury rather than to take it entirely from their consideration. This Court has said in *Edwards* v. *Phifer*, 120 N. C., 405 that "no principle is more fully settled than that this court will not interfere with the discretion of a trial Judge in setting aside a verdict

as being against the weight of evidence," while the re-reports of every term abound with cases where we are compelled to order a new trial for the improper *direction* of the verdict. Of course, every presumption is in favor of the verdict, and it should not lightly be set aside. It is equally true that it is the duty of the court to direct a verdict against the party on whom rests the burden of proof where there is nothing more than a mere scintilla of evidence; but where there is any reasonable doubt, it is proper and certainly safer to leave to the jury the exclusive determination of the facts.

These views are not new to this Court either in principle or application, but are again suggested by the increasing number of such cases. *State* v. *Allen, supra.* We fully appreciate the difficulties experienced by our brethren upon the circuit in deciding, offhand, difficult and novel questions, and we make these suggestions in no captious spirit, but believing that their observance will tend to the easier and better administration of the law. A new trial must be ordered.

New trial.