NANCY E. GATES v. A. MAX.

(Decided November 7, 1899.)

*Demurrer Under Act 1897, Chap. 109, (Since Amended, Act 1899, Chap. 131)—Evidence of Plaintiff, How Considered—Tax Books—Declarations of Party in Possession.*

1. In cases of demurrer and motions to dismiss under Act of 1897, the evidence must be taken most strongly against defendant.
2. If there is more than a scintilla of evidence tending to prove the plaintiff's contention, it must be submitted to the jury.
3. Tax book admissible evidence to go before the jury, entitled to some weight, it may be slight, but to be determined by them.
4. Declarations of a party in possession of property are admissible for the purpose of qualifying such possession, but not for the sole purpose of fixing pecuniary responsibility upon a third party, not then present.

CIVIL ACTION instituted in Justice's Court of DURHAM County, for recovery of $60 rent of store for 1897, and heard on appeal before *Bryan, J.,* at January Term, 1899.

At the close of plaintiff's evidence, the defendant demurred thereto, under the Act of 1897, chap. 109.

His Honor sustained the demurrer, and rendered judgment as of nonsuit, against the plaintiff, who excepted, and appealed to the Supreme Court.

The evidence and points raised are stated in the opinion.

*Messrs. Winston & Fuller,* for plaintiff (appellant).
*Messrs. Boone, Bryant & Biggs,* for defendant.

DOUGLAS, J.    This was an action brought before a Justice of the Peace to recover rent, appealed to the Superior Court, and thence to this Court.    In the court below, at the conclusion of the plaintiff's testimony, the defendant demurred to the evidence, under chap. 109 of the Laws of 1897.    The Court being of opinion that there was not sufficient evidence to go to the jury, sustained the demurrer, and dismissed the action.

While not necessary in the consideration of this case, it may be noted that the Legislature has amended the Act of 1897, by chap. 131 of the Laws 1899, to meet the suggestions of this Court as expressed in *Purnell v. Railroad,* 122 N. C., 832, 835; *Manufacturing Co., v. Railroad,* 122 N. C., 881, 888; *Cox v. Railroad,* 123 N. C., 604, 606, and other cases. The only question now before us is, whether there was more than a scintilla of evidence for the consideration of the jury. The rule to be followed in all such cases is clearly laid down by Justice FURCHES in delivering the opinion of the Court in *Johnson v. Railway,* 122 N. C., 955, 958, as follows: "In cases of demurrer and motions to dismiss under the Act of 1897, the evidence must be taken most strongly against the defendant.    Every fact that it reasonably tends to prove must be taken as proved, as the jury might so find."    Citing

*Bazemore v. Mountain,* 121 N. C., 59; *Spruill v. Ins. Co.,*
120 N. C., 141; *Ice Co. v. Railroad,* 122 N. C., 881, and
*Whitley v. Railroad.*

This has become the settled rule of this Court, by a long
line of decisions, extending from *Avery v. Sexton,* 35 N. C.,
247, to *Cogdell v. Railroad,* 124 N. C., 302.

It is equally well settled that if there is more than a scin-
tilla of evidence tending to prove the plaintiff's contention, it
must be submitted to the jury, who alone can pass upon the
weight of the evidence. *Cable v. Railroad Co.,* 122 N. C.,
892; *Cox v. Railroad Co.,* 123 N. C., 604, 607, and cases
therein cited.

The plaintiff testified, in her own behalf, as follows:
"That she owned a store near South Lowell. That it was
occupied in 1896 by Somers & Son, and also a portion of 1897.
The contract of 1896 was $125 a year, payable monthly.
There was no change in 1897. Max did not notify me of
any change. I had no other contract with Max. In 1896
Max questioned me very closely as to the class of goods that
could be sold at my store. In 1897 Somers & Son remained
two or three months. My store was vacant the rest of the
year 1897. I did not get any rent for 1897. The rent for
1896 was collected by law. Max said he did not want his
name known in this business. I had no dealing with Somers
& Son. I rented the store to A. Max...... In that con-
tract Max became surety for Somers & Son. I understood
him to say he would put a clerk out there. I owed F. C.
Geer, and transferred the note for rent signed by Somers &
Son, and Max as surety, to them. I think I signed one
paper and Max one. Both papers were signed at the same
time. Max had to pay Geer a part of that note because he
was surety. The contract was never changed. I did not sue
for $125 for 1897. I sued for $60 for 1897, I brought suit

after the change made by my husband and Mr. Geer. I had no conversation with Mr. Max after 1896, when he signed the note."

W. S. Terry, for plaintiff, testified that "he knows that store. He was there early in 1897, and saw many wagons there. Jacobson was there, and seemed to be boss. Andrews was there also. Jacobson is in Max's employ. They commenced taking goods down, and had them all down next morning. Jacobson sold some of the goods at private sale. He left none in the store. Drove off toward Durham. They also took Somers's horse and wagon."

Dunnigan testified for plaintiff: "I saw this file of papers in Max's store in Durham. I got them from A. Max. He told me that he had some accounts he wanted me to collect. Said they came from the corner store (Gates's store). I collected some of the accounts, and paid over the money to Max. The accounts were put in my hands for collection December 8, 1897."

W. G. Gates, husband of plaintiff, testified: "In the fall of 1896, about Christmas, I was in Max's store. I asked him if they wanted the store for the next year. Max said 'see Somers, and any arrangement you make with him will be satisfactory to me.' In a few days I saw Somers...... When we reached the store Somers said they couldn't afford to pay the rent they had been paying. I told him I would take $60 rather than let the house stay vacant. He said he would have to see his 'boss'...... That night I saw Max and told him I had seen Somers, and let him have it at $60. He said, 'I am glad you did.'"

Geer, for plaintiff, testified: "I went with Gates to the store to see Somers and son. I think he told me what Max had said before he went out there. Somers said he would have to reduce the rent. He could not tell until he saw his

'boss,' until he saw his master.   He called him also his part-
ner."

We think that this evidence, of which there is certainly
more than a scintilla, taken in the light most favorable to the
plaintiff, tended to prove her contention that the defendant
had a substantial interest in the business, thus making Som-
ers either an agent or a partner.

The defendant further contends that as there is evidence to
the effect that the plaintiff had assigned the rent in question
to Geer, she has no further interest in the subject matter of
the action.   This does not appear in the testimony of the
plaintiff herself, and hence can not be taken as an admission.
She was admittedly the owner of the storehouse, and is there-
fore *prima facie* entitled to the rents.   If the defendant
relies upon a transfer of the rents to prevent her recovery, he
must prove such a transfer.   It can not be found by the
Court on a motion to dismiss, for this would be the finding
of an affirmative fact, which can be done only by the jury.
In *White v. Railroad,* 121 N. C., 484, 489, this Court,
speaking by Justice FURCHES, lays down the following rule:
"The Court can never find, nor direct an affirmative finding
of the jury."   Citing *State v. Shule,* 32 N. C., 153.

Again in *Bank v. School Committee,* 121 N. C., 107, 109,
Justice FURCHES, speaking for the Court, says:   "But no
matter how strong and uncontradictory the evidence is in
support of the issue, the Court can not withdraw such issue
from the jury and direct an affirmative finding.   To do this
is to violate the Act of 1796—sec. 413 of The Code."   Cit-
ing *State v. Shule, supra; Hardison v. Railroad,* 120 N. C.,
492; *Spruill v. Insurance Co.,* 120 N. C., 141; *White v. Rail-
road,* 121 N. C., 484.   This doctrine has been repeatedly
reaffirmed.   *Collins v. Swanson,* 121 N. C., 67; *Eller v.
Church, Ibid,* 269; *Cable v. Railroad,* 122 N. C., 892; *Cox*

*v. Railroad,* 123 N. C., 604; *Dunn v. Railroad,* 124 N. C.,
252.

As to the first exception to the evidence, we think that the
tax book should have been admitted to go to the jury for what
it was worth.   *Austin v. King,* 97 N. C., 339; *Faulcon v.
Johnson,* 102 N. C., 264; *Ruffin v. Overby,* 105 N. C., 78;
*Pasley v. Richardson,* 119 N. C., 449; *Bernhardt v. Brown,*
122 N. C., 587; *Ridley v. Railroad,* 124 N. C., 37.   Such
evidence is generally said to be slight, but it still has some
weight to be determined by the jury.

As to the exclusion of the evidence of Somers as to the
ownership of the property, we have had some difficulty in
coming to a conclusion.   The general rule is that declara-
tions of a party in possession of property are admissible for
the purpose of qualifying such possession; but we do not
think that the authorities go to the extent of allowing such
evidence for the sole purpose of fixing a pecuniary responsi-
bility upon a third party, not then present.   To what extent
such declarations may be aided upon a new trial by evidence
tending to show agency or partnership, we are not prepared
to say, as the question is not now before us.

The plaintiff offered in evidence this remarkable contract
of rental, which was excluded:   "Durham, N. C., June 27,
1898.   This certifies that I, Squire Thomas, have rented
from A. Max the following goods:   One suit of clothes and
shirts, for which I promise to pay 25 cents cash, and $1.50
per week until the amount of $8 has been paid.   Any neglect
on my part to pay said rent when due  shall entitle said A.
Max or his assigns to repossess said articles without hinder-
ance or process of law, I forfeiting all that has been paid on
said article as rent for and during the time said property has
been in my possession; and I further agree to protect and
keep in good order the above-named article, and I will not

move said article without written consent of A. Max or his assigns. After all obligations are settled as per agreement, a bill of sale will be given of all the goods. (Signed) Squire Thomas, Agent L. Somers & Son."

As the matter is presented to us, we do not see its relevancy, although admitting its interest as illustrating a phase of business methods that has hitherto never been brought to our attention. For reasons stated above a new trial must be ordered.

New trial.