JOHN BROWN v. CAROLINA CENTRAL RAILWAY COMPANY.

*Nuisance—Receiver.*

1. The private nuisance which equity will abate by injunction must b e one occasioning a constantly recurring grievance from its nature insusceptible of adequate compensation in damages.

2. In determining upon the propriety of injunctive relief against such nuisances, the court will be influenced against ordering an abatement by the facts that the structure from which the nuisance arises is useful to the defendant and the public, and the injury to the plaintiff trifling.

3. The superior court of one county will not order the abatement of a nuisance erected by a railroad corporation (such nuisance caused in the defective construction of a certain trestle and culvert on the line of the road) when all the corporate property is in the hands of a receiver appointed by the superior court of another county.

(*R. & A. Air-Line* v. *Wickers,* 74 N. C., 220; *Hyatt* v. *Myers,* 71 N. C., 271; *Eason* v. *Perkins,* 2 Dev. Eq., 38; *Skinner* v. *Maxwell,* 68 N. C., 400, cited and approved.)

CIVIL ACTION removed from Cleaveland and tried at Fall Term, 1879, of LINCOLN Superior Court, before *Buxton, J.*

The plaintiff alleges that the Wilmington, Charlotte and Rutherford railroad company (now the Carolina Central) by the unskilful construction of a trestle and falling in of a culvert across Muddy Fork creek, just below his lands situate on both sides of the creek, caused an obstruction to the natural flow of the water in said creek, whereby it was thrown back and ponded on his land, and the same was rendered unfit for cultivation; that defendant company thereafter, to wit, in April, 1873, became the owner of said railroad with all its rights, property and privileges, and as such have maintained and allowed to exist ever since their purchase the same trestle and obstruction in said creek and thereby continued the injury to plaintiff's land.

The action is brought to recover damages for injury to

plaintiff's land from overflow and absorption occasioned by
the said obstruction allowed by defendants to continue in
the creek since their purchase, and for abatement of the
nuisance. At the trial, it was admitted that the ownership
of defendant company began in 1873, and that their said
road was duly placed in the hands of the defendants,
Grainger, Stout and Porter, as receivers, on the first day of
April, 1876, by a decree of the superior court of New Han-
over county, under whose control and management the
same has ever since been, and is now. Upon issues submit-
ted to the jury, it was found that the trestle and fallen cul-
vert were an obstruction to the natural flow of the water
when the defendant company bought the road, and had
continued to be and remain ever since, and that thereby the
plaintiff sustained an annual damage of twenty-five dollars.

Upon the admission of the parties and facts found by the
jury as above, the court adjudged that plaintiff recover
damages for three years next before the institution of his
suit, to wit, the sum of seventy-five dollars, but refused the
motion for the further judgment of abatement of the nui-
sance, and from such refusal the plaintiff appealed.

*Messrs. Hoke & Hoke*, for plaintiff.
*Mr. John D. Shaw*, for defendant.

DILLARD, J. In *Raleigh & Augusta Air-Line* v. *Wicker*, 74
N. C., 220, it is decided that in cases of ponding water by a
railroad by obstructing a natural or artificial drain-way, the
injury is not one taken into the estimate in measuring com-
pensation to a land owner, and therefore the company in
constructing its road must leave a space sufficient for the
passage of the water without injurious obstruction; or in
default thereof it will be answerable in damages by a repe-
tition of suits until the obstruction is removed, or in a

9

proper case it may be abated by the corrective powers of a court of equity.

So it was the duty of the company which originally built the trestle and culvert across Muddy Fork creek to have erected them with such care and skill as not to obstruct or throw back the water on plaintiff's land and to have kept them so, and equally incumbent on the defendant company since their purchase to do the same thing; or failing so to do, it was responsible for any consequent injury in one or more actions for damages merely, or be subject to abatement if the injury were such as to call for such remedy, consistently with the principles which govern courts of equity in such cases.

Now here the injury to the plaintiff is fixed by the jury at twenty-five dollars annually for three years next before this suit was begun; and upon the finding of damages in so trifling a sum and the other facts in the case, was it or was it not obligatory as a matter of law to order the abatement? or might the court have left the plaintiff to his actions for damages as at law?

The usual and only remedy at common law and under our former system for a private nuisance was by an action on the case to recover damages, with a right to repeat for any continuance of it, until the party from a motive of interest voluntarily removed it; and while a court of equity might interpose to prevent or abate such a nuisance, it was not every case in which the right to recover damages existed that would constitute a ground of jurisdiction in equity to exercise its powers. The injury to call for and justify compulsory abatement, it is held, must be such as is not from its nature susceptible of adequate compensation in damages, or such as will occasion a constantly recurring grievance, which cannot be otherwise relieved against. 2 Story's Eq., § 925; Adams Eq., 211; 3 Dan'l Chancery 1587.

Upon the establishment of the nuisance, as the plaintiff insists is done in this case by the verdict of the jury, the grant of process of abatement does not follow as a matter of course, but in that event will depend on circumstances of which the following will be influential. The chancellor in such case will consider whether he will leave the party to his common law remedy or order an abatement, and as connected therewith, his determination will and ought to be influenced against ordering abatement, by the fact that the structure from which the nuisance arises is useful to the defendant, and the injury therefrom to the plaintiff trifling and susceptible of adequate compensation in damages; and by the further fact of a great public benefit overbalancing the private injury, in which case the private interest should, as established by the authorities, be subordinated to the public good. *Hyatt* v. *Myers*, 71 N. C., 271; *Eason* v. *Perkins*, 2 Dev. Eq., 38.

In this case the injury alleged is the unfitting some of the plaintiff's lands for purposes of cultivation. And the jury say the damages thereby annually suffered is twenty-five dollars. And it does not appear either by averment or otherwise that the damages cannot or will not be paid, nor that the grievance can only be relieved against by abatement by the court. Upon this view by itself, His Honor as it seems to us might have properly pronounced the judgment he gave, and refused to order abatement as moved by the plaintiff. But when the fact is superadded that the road and its operation and general management were in the receivers appointed by decree of the superior court of New Hanover the correctness of the refusal to order an abatement cannot, as we think, be questioned.

The effect of appointing receivers was to take the road into the hands of the court, to be operated and managed, expenses paid and proceeds distributed, and to answer for damages incurred, and be abatable in any part of its track

or works creating a nuisance to a private person under the rules, regulations and orders of the court having the custody. High on Receivers, §§ 1, 2; *Skinner* v. *Maxwell*, 68 N. C., 400.

In such situation, the property and its proceeds in the hands of the superior court of New Hanover could not be taken away or applied to the payment of the damages adjudged against the defendant company, by any execution or order of the superior court of Lincoln; nor could the trestle and fallen culvert constituting a part of the track be pulled down by the orders of any other court of equal jurisdiction than of the one now in the occupancy and control of the road. It was proper in order to avoid a conflict of jurisdiction for the court in Lincoln to have refused the order of abatement and thus have left the plaintiff to repeated actions, or to go, as he might, with his judgment to the court of New Hanover for payment of his damages assessed, and also for the proper action of that court upon his claim of equitable right to abatement.

There is no error, and the judgment below must be affirmed.

No error.                          Affirmed.