## RAILROAD v. LAND CO.

(Filed December 19, 1904).

1. EMINENT DOMAIN—*Railroads—Evidence.*

In a proceeding to condemn land for a right of way, evidence to show the value of the land by its location and surroundings is admissible.

2. EMINENT DOMAIN—*Railroads—Evidence—Tax List.*

In a proceeding to condemn land for a right of way, a tax list is not admissible to show the value of the land.

3. EMINENT DOMAIN—*Railroads.*

Where a railroad condemns the whole of a dedicated street, the abutting owner is entitled to compensation for the full value of the land taken less the value of any benefits arising therefrom peculiar thereto.

ACTION by the Suffolk and Carolina Railway Company against the West End Land and Improvement Company, heard by *Judge W. A. Hoke* and a jury, at January (Special) Term, 1904, of the Superior Court of PASQUOTANK County.

This is a special proceeding to condemn a right of way for railroad purposes through certain lands owned by the defendant. It appears that the defendant bought about 130 acres of land adjoining the corporate limits of Elizabeth City, which is laid off into lots and streets. Some of the streets were improved, while others were not. Among the unimproved streets was Grice street, which was condemned as an entirety as a right of way for the use of the plaintiff, and has been taken for such use. The report of the commissioners does not state the length or width of the right of way, but describes it simply as "all that certain strip of land across the lands of the defendant company and known and

described as Grice street." The evidence and the plat show that said street is fifty feet wide, including sidewalks—that is, between the building lines. The sole issue was the amount of damages that the defendant was entitled to recover, which were assessed by the jury at $2,300. There was testimony on both sides. The plaintiff appealed from the judgment rendered.

*Pruden & Pruden* and *E. F. Aydlett,* for the plaintiff.
*Ward & Thompson,* for the defendant.

DOUGLAS, J., after stating the case. The principles involved in this case are few and well settled. Its determination really depends more upon the weight given to the testimony, and that has been settled by the verdict of the jury. The first exception is to the admission of the following testimony given by a witness for the defendant: "There is a street two blocks away parallel to the one down which the railroad runs, which has been improved at considerable expense, having been paved with brick, and on this street several residences of good size and quality have been erected. The said improved street and the street covered by the right of way of the railroad are parts of the same tract of land, belonged to the defendant company and are near each other. The said improvements placed upon the property in question increase the value of the whole tract. Cross streets connected the improved street with Grice street."

The record states that it was given on cross-examination. This is denied by the plaintiff. We must assume the truth of the record, but it makes no difference, as we think the evidence was competent in either event. It does not come within the prohibition of the rule affirmed in *Rice v. Railroad,* 130 N. C., 375, following *Warren v. Makely,* 85 N. C., 12, and that class of cases. It does not seek to prove the

value of one piece of land by comparison with the value of another, but to show its value by its location and surroundings. It is common knowledge that suburban property will sell better if it is in a good neighborhood, near to a macadamized road and in the immediate vicinity of churches and schools. If this property is within two squares of a paved street and close to good houses it would necessarily sell for more than if it were far from any house, with a mile of mud-holes between it and the town. This seems to us less a question of law than of the natural and necessary effect of the evidence. The witness had testified on his direct examination that the lots on Grice street were worth $150 on an average; that the damage would average at least fifty per cent. and would amount, in his opinion, to $5,626, being an average of $75 per lot. On cross-examination he was testifying to facts which tended to show the reasonableness of the opinion he had expressed. We do not find any exception to this evidence in the record, but, as both sides argued it under the assumption that there was an exception, we have considered it in that view. We see no error in its admission.

The second exception is to the exclusion of the tax list which was offered by the plaintiff to show the value of the land in question. It was properly excluded as being clearly incompetent for the purpose for which it was expressly offered. There are cases in which the tax lists have been admitted as some evidence, though slight, of claim of title and of the character of possession by the party listing the same. *Austin v. King,* 97 N. C., 339; *Pasley v. Richardson,* 119 N. C., 449; *Barnhardt v. Brown,* 122 N. C., 587, 65 Am. St. Rep., 725; *Gates v. Max,* 125 N. C., 139. Where the mere listing of the land is the act sought to be shown, the tax lists are admissible, because the lister is the actor; but the rule is essentially different where the value of the land is sought to be proved thereby, because the valuation is

the act of the assessors and therefore *res inter alios acta* as between the parties to this proceeding. As was said by the Court, through *Pearson, C. J.,* in *Cardwell v. Mebane,* 68 N. C., 485: "The 'tax lists' were not competent evidence to show the value of the land, as the assessors were not witnesses in the case, sworn and subject to cross-examination in the presence of the jury." In that case the tax lists were admitted for the purpose of proving the good faith of the vendees, who were charged with paying their father an exorbitant or fictitious price for the land, but not for the purpose of showing its actual value. In *Ridley v. Railroad,* 124 N. C., 37, this Court, speaking through *Clark, J.,* says: "Acquiescence in listing and payment of taxes by another is evidence against the party out of possession. But the tax valuation being placed on the land by the tax assessors, without the intervention of the land-owner, no inference that it is a correct valuation can be drawn from his failure to except that the valuation is too low. Such valuation was *res inter alios acta,* and is not competent against the plaintiff."

The third and last exception is to the following part of his Honor's charge, to-wit:

"The jury would estimate the damages, if any, arising from the impaired value of defendant's land caused by condemnation of plaintiff's right of way; would deduct therefrom any advantages and benefits arising from the construction of plaintiff's railroad which were peculiar to this land, but not such benefits and advantages as were common to this and the public generally; and on applying this rule the excess, if any, of the damages over the benefits and advantages would be the amount to award defendant in response to this issue."

It is needless to discuss this question, in view of the recent and well-considered case of *Railroad v. Platt Lands,* 133 N. C., 266, in which the rule laid down in the charge

is expressly approved. In fact, the plaintiff·does not seem to question it as a general proposition of law, but in its brief explains the nature of its objection in the following words: "The objection to the charge of the Court is that the Court left it with the jury to estimate full damages for the right of way of plaintiff. We think this is error. The street had been appropriated for the public. The property had been laid off in lots and the streets were necessary for the use of the lots. They are marked on the plat and the property is being offered for sale in lots, so that the defendant owning this property would be entitled to damages by reason of the additional burden placed upon Grice street and not for the full damage for the right of way. Grice street, as shown by the plat, is donated for the use of the public, being laid off in lots, and the defendants cannot withdraw the right to the street and do not claim or desire to do so; therefore they are not entitled to the street which they have donated for the use of these lots and means to sell them, and they can only recover by reason of the ownership of the adjoining lots such additional burden as the right of way for the plaintiff shall place upon said Grice street. It is admitted by both plaintiff and defendants that where the railroad right of way goes is Grice street." The plaintiff relies upon *White v. Railroad,* 113 N. C., 610, 22 L. R. A., 627, 37 Am. St. Rep., 639, and *Hodges v. Telegraph Co.,* 133 N. C., 225, in support of its contention that the defendant can recover only for the additional burden of the railroad right of way. To the same effect is *Phillips v. Telegraph Co.,* 130 N. C., 513, 89 Am. St. Rep., 868. We presume that the principle itself is not questioned by either party to this proceeding, however they may differ as to its application.

In the case at bar the plaintiff does not in practical effect impose an additional burden upon the street, but takes the street itself from building line to building line, thus render-

ing it useless as a highway and destroying the essential purpose of its dedication. It is stated in the evidence that the plaintiff is digging up the entire street, and that the track is above the level of the surrounding land. This will virtually compel the owners to cut off from the abutting lots enough land to make a street on each side of the right of way, which would not leave sufficient depth for suburban lots in the absence of public sewerage. Moreover, under these circumstances the street would be practically impassable from side to side and could never be made a handsome or convenient thoroughfare. It is well settled that the defendant is entitled to recover not only the value of the land taken, but also the damage thereby caused to the remainder of the land. Even if the plaintiff should not use the entire right of way, the rule would be the same, as it is not what the plaintiff actually does, but what it acquires the right to do, that determines the *quantum* of damages. If the plaintiff acquires the right to use the entire street, that land is, in contemplation of law, just as much taken for the purposes of the easement as if it were filled with railroad tracks. Of course this rule does not apply to subsequent acts of tort not contemplated in the original condemnation. This distinction is clearly pointed out in *Railroad v. Wicker,* 74 N. C., 220, and the rule therein laid down has been uniformly followed by this Court. *Brown v. Railroad,* 83 N. C., 128; *Knight v. Railroad,* 111 N. C., 80; *Mullen v. Canal Co.,* 130 N. C., 496, 61 L. R. A., 833. We are somewhat struck with the action of the original commissioners, who assessed the defendant's net damages at $100, stating in explanation that they had estimated and deducted "the increased value peculiar to part of said abutting land that the said railroad would bring." What this increased value would be, or how it would be brought about, they do not state. The only evidence we find of any such probable in-

crease in value is the statement made by both the plaintiff's witnesses that the railroad "opened up the property for factories and increased the value of the same more than the damages sustained." To destroy property for the purpose for which the owners alone intend it, and turn it into factory sites when there are no factories in sight, is a benefit entirely too remote and contingent to be capable of present estimation. Some of us may have heard of factory sites before, and, as we listened to the siren voice of the real estate agent, have seen lofty factories rise in the air, pouring forth their countless thousands of well-paid operatives seeking to buy a few choice lots in the neighborhood of Eden. Perhaps we have revisited in after years the scene of once bright but faded anticipations, only to find a lonely cow grazing in the middle of Broadway or a solitary pig-pen standing as a monument to buried hopes. It is due to the plaintiff's counsel to say that they did not press this contention in this Court, either in brief or argument.

There is another matter which, while not under exception, we think deserves attention. The commissioners, in their report condemning the land, describe it as follows: "Did proceed to condemn and by these presents do condemn all that certain strip of land across the lands of the defendant company and known and described as 'Grice street,' for a right of way to be used by the plaintiff company for the purposes set out in said petition." It is true the said right of way was fully and correctly described in the plaintiff's petition, which referred to a plat properly filed; but it seems to us that, as the easement is conveyed to the petitioner by the report of the commissioners when confirmed, the said easement should be therein described as fully and correctly as it would be in a grant. Indeed, it might be better if the extent of the easement were also set out in the judgment of

the Court, although in the present case his Honor's judgment could not have been other than it was, as the case was presented to him.

The judgment of the Court below is

Affirmed.