WILLIAM D. JENKINS, Appellee, v. STATE HIGHWAY COMMISSION et al., Appellants.

MARCH 6, 1928.

*John Fletcher*, Attorney-general, *Maxwell A. O'Brien* and *Gerald O. Blake*, Assistant Attorney-generals, for appellants.

*Helsell, Helsell & McCall* and *John A. Hull*, for appellee.

EVANS, J.—It appears from the record that the action of the commission which is complained of by the petitioner was had pursuant to an attempt and plan on the part of the commission to straighten a primary road known as the Lincoln Highway, and as State Highway No. 30, extending from the city of Clinton to the city of Council Bluffs. The intended acts of the commission purported to be for the purpose of improving the highway, and as a preliminary aid to its further improvement and construction by the grading, draining, and paving thereof. This alleged improvement involved a departure from the line of the primary road, as actually existing, and an abandonment of a section or sections of such primary road, and an adoption in lieu thereof of a cut-off in a direct line over a right of way partly secured by purchase and partly sought by condemnation. This cut-off extended for a distance of three miles, of which one mile was over the land of the petitioner. This cut-off of three miles will eliminate four miles of the original primary road. The return to the writ includes the report of

the highway engineer, upon which the commission was acting, and such return and report sufficiently indicate the engineering and economic propriety of the shortened route. The engineer's plat is before us. The four-mile section of primary highway proposed to be abandoned appears thereon as very irregular in its location. Five right angles will be eliminated by the change. The *locus quo* is in the vicinity of the Des Moines River. The change involves a change of place of crossing the Des Moines River. The present primary road crosses this river obliquely, and its bridge is so constructed. whereas the proposed route approaches and crosses the river at right angles. The proposed point of departure from the old route is a short distance southwest of the city of Boone. From this point the proposed line extends southwesterly for three miles, at a varying distance from the present location, not exceeding one-half mile at any point.

The contention for the petitioner is that the proposed location of the cut-off was, in legal effect, an attempted *establishment* of a highway; whereas the commission was wholly without authority to *establish* a highway. The argument is that Section 4560, Code of 1924, confers power to *establish* a highway exclusively upon the board of supervisors; that this power has not been transferred to the highway commission; that the only power transferred to the highway commission over the primary roads was that of construction, improvement, and maintenance; that such construction or improvement by the highway commission can be made only pursuant to a prior *establishment* by the board of supervisors; that the power conferred upon the highway commission to condemn real estate for right-of-way purposes is necessarily confined to such slight changes and additions as do not involve a change of situs or abandonment of any part of the original location of the primary road.

The argument for the commission is that, for the purpose of construction, reconstruction, improvement, and maintenance of the primary roads, plenary jurisdiction has been conferred upon it, and has been transferred to it from the boards of supervisors of the respective counties; that the improvement of this highway by the proposed cut-off is such an improvement as the board of supervisors of Boone County could have made on its own motion, and in disregard of Section 4560 *et seq.*, Code

of 1924, under existing law, prior to the enactment of Chapter 101, Acts of the Forty-second General Assembly; that the power thus conferred upon the board of supervisors under such existing law was one respecting construction and maintenance; that such power, so far as it affected primary roads, was transferred to the highway commission by Chapter 101, Acts of the Forty-second General Assembly. This is a sufficient preliminary indication of the nature of the ultimate issue presented for our consideration. It is wholly a question of interpretation of our statute. The principal legislation to be considered by us is Chapter 101 of the Acts of the Forty-second General Assembly. So far as material to this issue, such Chapter 101 has been incorporated in the Code of 1927, and is included in Chapter 241-B1 thereof. To avoid the confusion of double reference, we shall refer to the various sections of Chapter 101, Acts of the Forty-second General Assembly, as they appear in the Code of 1927, from Sections 4755-b1 to Section 4755-b36, inclusive.

I. The commission challenges the procedure by certiorari, and contends that the petitioner had no right thereto, because he had other appropriate remedy, and because the acts which are

challenged by the petitioner were wholly legislative and administrative, and in no sense judicial. We think the district court properly sustained the procedure, and we shall devote no time to a discussion of the question, except to cite the following authorities properly relied on by the appellee: *Abney v. Clark*, 87 Iowa 727; *Sinnott v. District Court*, 201 Iowa 292; *Young v. Preston*, 131 Iowa 292; *Ryan v. Hutchinson*, 161 Iowa 575.

II. We proceed to a consideration of our various statutes which bear upon the main issue between the parties.

The first reliance of appellee is upon Section 4560, which is as follows:

"4560. The board of supervisors has the general supervision of the roads in the county, with power to establish, vacate, and change them as herein provided, and to see that the laws in relation to them are carried into effect."

The procedure to be followed by the board of supervisors pursuant to Section 4560 is set forth in its following sections, down to, and including, Section 4600. These sections have been

 a part of our statute law substantially without change for more than 75 years. It may be noted at this point that the power to *establish* roads conferred upon the board of supervisors by Section 4560 was not one which could be exercised by such board upon its own initiative, but only upon the initiative of a petitioner. Nor could such power be exercised except by the procedure set forth in its following sections. Pursuant to this initial section, the roads of Iowa were largely laid, in an early day, on every section line. This was especially so in those parts of the state where the topography was regular and reasonably level. The road system, as thus laid out, appeared upon the records somewhat like a checkerboard. Whenever a traveler wished to go from one point to another, 10 or 15 miles distant, he had his choice of a dozen or more routes over which he might travel. It was usually a choice of evils, all of the roads being unimproved, and surfaced only with the natural soil. Such was the general condition when, in these later years, legislation began to cope with the problem of improvement of the highway. Pursuant to such later legislation, the roads were first classified as county and township roads, and still later, as primary and secondary roads. Prior to the enactment of Chapter 101, Acts of the Forty-second General Assembly, jurisdiction over primary roads was in the boards of supervisors of the respective counties. Such enactment purported to transfer such jurisdiction from the boards of supervisors to the state highway commission. That section thereof appearing as Section 4755-b36, Code of 1927, is as follows:

"The powers and duties of the board of supervisors with respect to the construction and maintenance of primary roads are hereby transferred to the state highway commission."

This section becomes the first reliance of the appellant.

Putting Section 4755-b36 against Section 4560, appellee contends that the power to *establish*, conferred by Section 4560, is in no manner infringed or amended by Section 4755-b36, but that the latter section deals only with the power and authority to construct and maintain. We deem it clear that the power of the supervisors to *establish* roads by the procedure specified in Section 4560 and its following sections has not been supplanted. Nor has authority been conferred by any legislation

upon any other body to *establish* a highway by the procedure specified in Section 4560 *et seq.* It does not follow that a highway or sectors of a highway may not come into legal existence in other manner than by the procedure thus pointed out. It is well noted in appellee's brief that a highway may come into legal existence through dedication and acceptance, without any of the statutory procedure; that it may thus come by prescription and long use, without such procedure; and that it may thus come by direct legislative action. Surely it may come through legislative mandates, whether addressed to the board of supervisors or to other agencies.

In order to get the purport and force of Section 4755-b36, above quoted, we must needs inquire what power, if any, had been conferred upon the board of supervisors over primary roads as respects construction or improvement other than the general power of *establishment* conferred by Section 4560 *et seq.* Sections 4607 and 4608, Code of 1927, the material part of which first appeared in the Supplemental Supplement of 1915, provide as follows:

"4607. Boards of supervisors *on their own motion* may change the course of any part of any road or stream, watercourse, or dry run, within any county in order to avoid the construction and maintenance of bridges, or to avoid grades, or railroad crossings, or to straighten any road, or to cut off dangerous corners, turns, or intersections on the highway, or to widen any road above statutory width, or for the purpose of preventing the encroachment of a stream, watercourse, or dry run upon a public highway."

"4608. The cost entailed by a *change* in a highway as provided in the preceding section shall be paid:

"1. From the primary road fund in case the change is on a primary road.

"2. From the county road fund or from the county bridge fund, or from both of said funds, in case the change is on a county or township road."

The italics are ours. It will be noted that the power here conferred upon the board of supervisors is quite collateral to, and independent of, the provisions of Section 4560 *et seq.* In this case the board was empowered to act upon its own motion, and by procedure wholly different from that provided pursuant

to Section 4560. It is, in terms, a power to make ''changes for safety, economy, and utility.'' Section 4607 is manifestly not intended as a repetition of powers conferred by Section 4560. It declares a clear distinction between the power to *establish* and the power to *change* a road already established. It confers an additional power, and a summary one, and is plainly responsive to the growing necessities of growing communities for improved highways. On this point, Section 4621 is significant. It provides:

''4621. The foregoing provision with reference to *changes* in the highway shall not be construed as compelling the board to abandon any part of a highway already established, but if it be proposed to abandon any part of a highway already established, notice shall be served, as herein provided, upon the said record owners as aforesaid through which or abutting upon which said highway so proposed to be abandoned, extends.''

It will be noted that this section not only recognizes the power to *change,* but also the power to abandon and to *vacate* a highway already established, and to do so without use of the power conferred by Section 4560, and without resort to the procedure provided in its following sections. This distinction permeates all subsequent legislation on the subject of roads and their improvement. The net result of our road legislation is that primary roads are wholly withdrawn from the jurisdiction of the board, and are transferred to the exclusive jurisdiction of the commission; and this is so notwithstanding the power of *establishment,* reserved to the board under Section 4560. No future *establishment* of a road by the board under Section 4560 could affect the exclusive jurisdiction of the commission over primary roads. These are already selected from roads already established. A road hereafter established by the board under Section 4560 would, of necessity, fall into the class of secondary roads. The primary roads would still be what they are now, and would still remain, as now, within the jurisdiction of the commission. The only statutory provision for a change in primary roads is to be found in Sections 4607 and 4621. Section 4607 has not been repealed. The power defined therein still rests upon the board, as respects the construction and maintenance of *secondary* roads. It has been transferred to the commission, as respects the construction and maintenance of *pri-*

*mary* roads. When the power defined by Section 4607 was originally conferred upon the board, the power of purchase or condemnation of real estate was also conferred upon it by Section 4609 *et seq.*, in order to enable it to exercise the power conferred by Section 4607. When the power defined in Section 4607 was transferred to the commission, as respects primary roads, the power of purchase and condemnation for right of way was expressly conferred upon the commission by Section 4755-b27. This latter section becomes specially significant when considered in the light of the pre-existing statute. This section is, in legal effect, a substitute for Section 4732, Code of 1924, enacted by the fortieth general assembly. The two sections are as follows:

"4732. In the improvement of extensions of the primary road system within cities or towns hereunder, the board of supervisors shall have power to purchase or condemn the necessary right of way therefor, and such condemnation proceedings shall be under the same laws as now apply to the condemnation of right of way for roads outside of cities and towns on primary roads."

"4755-b27. In the improvement of roads hereunder, including extensions of primary roads within cities and towns as provided in the preceding section, the state highway commission shall have the authority to purchase or to institute and maintain proceedings for the condemnation of the necessary right of way therefor. All the provisions of the law relating to the condemnation of lands for public state purposes, shall apply to the provisions hereof in so far as applicable."

It will be noted that Section 4755-b27 has supplanted former Section 4732. Whereas, under Section 4732, Code of 1924, the power of condemnation (or eminent domain) was conferred upon the board of supervisors alone, for the purpose of extending primary roads into cities and towns, under Section 4755-b27, such power of condemnation is conferred upon the highway commission, and is so conferred for a broader purpose than that specified in Section 4732. Under Section 4755-b27, the power of condemnation conferred upon the highway commission is for the broad purpose of "improvement" of the primary roads, "including extensions of primary roads within cities and towns, as provided in the preceding section." That is to say, whereas the

power conferred upon the board of supervisors by Section 4732 was qualified and limited, the power of condemnation conferred upon the highway commission by Section 4755-b27 was not specific, but was made as broad as the requisites of "improvement." A comparison of the present Section 4755-b26 with the pre-existing statute, Section 4731, Code of 1924, is significant along the same line. Other sections of this chapter are directly or indirectly confirmatory of this view. Section 4755-b8 provides:

"The state highway commission shall proceed with the *improvement* of the primary road system as rapidly as the funds become available therefor, until the entire mileage of the primary road system is graded, drained, bridged, and surfaced with gravel, pavement, or other surfacing approved by the commission as adequate for carrying the traffic thereon. * * *"

Section 4755-b9 provides:

"Before proceeding with the improvement of any primary road, the commission shall cause suitable surveys, plans and specifications for said proposed work to be prepared * * *."

See, also, Sections 4755-b1 and 4755-b2.

This comparative study of the present statute in the light of pre-existing statute is clearly indicative of the purpose of the legislation.

The result of this legislation is, therefore, that the board has now the power defined by Section 4607, and may exercise the same as respects secondary roads only. Nor is it in any manner precluded from such exercise by Section 4560 *et seq*. It is likewise true, of logical necessity, that the commission has the same power under the same section, as respects primary roads.

It will be noted that the words "construction" and "improvement" are used interchangeably in the various statutory sections. As applied to the subject-matter, they are quite synonymous. The *establishment* of the great body of our highway system was done more than 50 years ago. The system thus *established* carried no other public investment than the cost of the right of way, which in those days amounted to very little. The original road was a mere right of way over the natural soil, and was a crude acquisition. Throughout the intervening years, there has been a continuing process of construction, improvement, and maintenance. Grading, draining, bridging, and surfacing have been the recognized requisites for construction and

improvement of the highways. Thus is the road *constructed*; thus is it *improved*. Construction is improvement; and improvement is a part of the process of construction. As respects the duties of the state highway commission, its work is always progressive, and may as properly be described by one name as by the other.

In the light of the foregoing, we reach the conclusion that the power defined in Section 4607, as applied to primary roads, now rests upon the state highway commission, notwithstanding that the power of *establishment* is still reserved to the board of supervisors under Section 4560. Whether, and to what extent, Section 4560 has been *qualified* in its application by the enactment of Section 4607, we have no occasion to consider. It is doubtless true that Section 4560, as the older legislation, could not obstruct the operation of the later legislation. Nor can the board establish a *primary* road, as such. Whether, under Section 4560, it can *vacate* a primary road under improvement by the state highway commission is a question that can be deferred.

It remains for us to consider whether the change proposed by the commission is so extensive in its length as to transcend the powers conferred upon the commission by the statute, and thereby to work a mere evasion of the statute.

III. It is contended by the appellee that the proposed change involved herein is so extensive in its length as to transcend the powers contemplated by Section 4607. Is the proposed cut-off too long? Such is the question. The argument is that the statute contemplates only slight changes, and such as do not materially change the location of the original establishment or change the identity of the right of way. The question thus raised is a comparative one. The appellant looks upon this road as extending from Clinton to Council Bluffs,—350 miles,— and contends that a three-mile cut-off is comparatively short. The appellee contends, on the other hand, that the road must be reduced and localized, for the purpose of the comparison; that the property owner knows it only locally; that he is concerned only in that mile thereof which rests wholly upon his farm. How long is a road? The statute defines its width, but gives no intimation of its length. Is a long road singular or plural, one or many? What is the entity of a road? Or its identity? The sector under consideration is a part of State Highway No. 30.

It is also a part of Federal Highway No. 30. It is being improved under both state and Federal supervision, and at state and Federal expense. A township road might plausibly be deemed to be limited to 6 miles in length, and a county road to 24 miles. But no reason occurs to us why a state highway, extending from Clinton to Council Bluffs, should be deemed any shorter than the distance thus traversed. See *Conrad v. Shearer,* 197 Iowa 1078. When we look at the enterprise, therefore, in its full magnitude, the proposed cut-off seems comparatively small, and is consistent with the spirit and intent of the statute. It is to be borne in mind that the state has embarked upon a tremendous enterprise in the improvement of its highways, which involves the expenditure of tens of millions of dollars. It is of the highest importance that engineering skill shall be employed and that its judgment be obeyed.

That our conclusion at this point conforms to the legislative mind is abundantly indicated in the legislative proceedings leading up to the adoption of the legislation. These appear in the legislative journals. It appears therefrom that, in the consideration of this enactment, an amendment was offered which provided that "no continuous relocation" should exceed 80 rods in length. This amendment was debated and rejected. Another amendment was offered, limiting such relocation to a maximum of five miles, unless permission of the board of supervisors be had. This amendment was debated and rejected. These proposed amendments were preceded by an offered amendment providing that there should be no relocation of a primary road without the consent of the board of supervisors. This also was rejected. It is manifest, therefore, that the construction of the statute which we now adopt is consistent with the history of its enactment. Upon the whole record, therefore, we reach the conclusion that the district court erred in annulling the action of the highway commission.

The judgment below must, accordingly, be reversed and remanded, with directions to dismiss the plaintiff's petition.—*Reversed.*

All the justices concur.