Ray M. Welton, Appellee, v. Iowa State Highway Commission et al., Appellants.

No. 40497.

December 13, 1930.

*Maxwell A. O'Brien, Devitt, Eichhorn & Devitt,* and *McCoy & McCoy,* for appellants.

*F. M. Beatty* and *T. J. Bray,* for appellee.

DE GRAFF, J.—The plaintiff-appellee Ray M. Welton is the owner of a farm comprising about 192 acres of land, 8 miles east of Oskaloosa, in Mahaska County, and 2½ miles from the town of Cedar. His land under the government survey is the NE¼ and the NE¼ of the NW¼ of Section 11, Township 74 north, Range 15 west of the 5th P.M. The farm originally consisted of the quarter section, less part of the township road running along the west line thereof, and the right of way of the Chicago, Burlington & Quincy Railroad, as shown by the plat hereinafter made a part of this opinion. The NE¼ of the NW¼ of Section 11 was subsequently added to the farm by purchase. This 40 and the 160 acres are divided by the township road, extending in a north and south direction, and also by the right of way of the Chicago, Burlington & Quincy Railroad. Approximately 5.6 acres are taken from the farm by the railroad right of way, which runs in a diagonal direction from the northwest to the southeast, but in a straight line, dividing the 160 acres so that 77 acres lie northeast of the railroad track and 74 or 75 acres southwest of the railroad track. This right of way continues on across the northeast corner of the 40 acres, leaving a small triangular piece in the extreme northeast corner of said 40 acres. The railroad right of way and the township road cut the plaintiff's farm into four parcels, marked in the plat hereto attached as A, B, C, and D. The 192-acre tract has two sets of improvements. Upon the 160 acres and on the south side of the

railroad track, facing the township road to the west, are located the main buildings, consisting of a modern house, barn, and granary. Across the road, and at a short distance to the north from the main buildings, is another set of improvements, located on the 40 acres, consisting of a house, shed, barn, and feed yards. The land is of good quality, and may be termed rolling prairie land, but is cut by a few ditches, along which, as plaintiff testified, are strips of gumbo.

In September, 1928, the defendant state highway commission, as part of the plan for the improvement of Primary Road U. S. No. 63 through Mahaska County, being unable to agree with the plaintiff Welton as to the damages that would be caused him, condemned a strip of land immediately adjacent to and parallel with the Chicago, Burlington & Quincy right of way, across plaintiff's land. The right of way thus condemned takes 11.05 acres, and is 80 feet wide across the 40 acres and 135 feet wide across the 160 acres. The right of way across the 40 acres contains approximately .37 acres, and on this .37 acres were located about 15 fruit trees. This did not constitute a commercial orchard, and the trees had been planted prior to the time that the Chicago, Burlington & Quincy Railroad went through the farm, more than 40 years before the highway condemnation proceedings in the instant case. None of the buildings were taken in the right of way condemned, and they are in fact located some distance to the southwest of the new highway. The plaintiff had a private crossing over the Chicago, Burlington & Quincy right of way, with wing fences and cattle guards. At this point the defendant highway commission constructed a crossing over the new highway, connecting with plaintiff's crossing over the railroad. The crossing constructed by the defendant is 20 feet wide, and graded level with the highway and land adjoining. This crossing is located approximately in the middle of the 160 acres, and about 70 rods from the buildings. Between the barns and this crossing the 160 acres have been kept in pasture, and fenced to the crossing. The plaintiff does his livestock feeding on the 40 acres where his feed lots are located. Leading from the township road immediately north of the place where it crosses the railway on plaintiff's land is a gate, leading into the 77-acre tract. This gate is about 25 rods from the buildings on the 40 acres. The farm is not all fenced hog tight.

The north fence on the 77 acres has been hog tight for about three months only in the last ten years, and except for that time, consisted of two barbed wires. It does not appear that the north 77-acre tract was ever used for a hog pasture. The cattle from plaintiff's feed lots have ready access to the 77 acres through the gate just referred to, north of the railroad right of way on the township road. 40 acres of the 75-acre tract south of the railroad have been in pasture for about 20 years, and the balance in crops. The 40-acre tract has about 20 acres in blue-grass pasture, 12 to 14 acres in feed lots, and the balance in corn. Plaintiff's valuation witnesses fixed the damage to this farm at from $17,061 to $21,924, by using one way of computing the damage; and by another method permitted by the court, over objection, the figures run from $18,812.50 to $27,525. The testimony of the plaintiff's valuation witnesses on the larger amount of damage was based upon the value of the farm in tracts or parcels, and was admitted over objections by the defendant. Motions to strike this testimony were overruled. The plaintiff was thus permitted by the court to use two methods of computing the damage to the farm. Witnesses for the defendant placed the damage to the farm at from $3,200 to $3,890. On cross-examination of plaintiff's witnesses, it developed that they placed a damage to the farm of from $10 to $15 an acre for the original severance by the Chicago, Burlington & Quincy right of way, which is 66 feet wide across plaintiff's farm, and placed no damage because of the township road. It will be observed that no additional severance of the farm is made by the highway right of way, and that it extends through the plaintiff's farm on a straight line, not touching the buildings at any point, and that no land intervenes between the railway right of way and the highway.

The award of the trial jury amounted approximately to $900 an acre for the land taken for the highway right of way. The injury to the plaintiff's land, speaking in specific terms, was the taking of 11.05 acres, additional fencing along one side of the right of way, if deemed necessary, together with the inconvenience in crossing the highway; whereas, theretofore, the plaintiff was required to cross the railroad right of way only. There are no additional point rows, and the farm may be operated in the same manner that it was before the highway was constructed. The situation of plaintiff's buildings has not been

changed. The landowner has the same means of access from these buildings to his farm as he had before, except that he is now required to cross the highway, in addition to the railway.

 The jury was in duty bound, in applying the correct measure of damage, to base its verdict on the difference in the reasonable market value of the farm immediately before and immediately after the taking by condemnation, not taking benefits, if any, into consideration.

The blueprint or plat here shown will assist in visualizing the land geography and environments with which we are here confronted.

Divers propositions or brief points are stated and argued by the appellant state highway commission, and to these we now turn.

I.  The first proposition relied upon by appellant for reversal is that the trial court erred in permitting the plaintiff to show the value of the separate parcels of land, A, B, C, and D,

 comprising the farm, as shown by the foregoing plat.  This testimony was subject to proper and timely objections.  The true rule or measure of damage is the depreciation in the market value of the property caused by the condemnation for the location and construction of the highway; or, putting it in other words, the amount of damages which the plaintiff is entitled to recover is the difference between the fair and reasonable market value of the farm immediately before the appropriation of the land for highway purposes and the fair and reasonable market value of the farm immediately after the said appropriation, not taking into consideration the benefits, if any, that resulted or may result to the plaintiff.  *Gregory v. Kirkman Cons. Ind. Sch. Dist.*, 193 Iowa 579; *Des Moines Wet Wash Laundry v. City of Des Moines*, 197 Iowa 1082.  In the instant case, as illustrative of the second method of arriving at valuation, as heretofore stated, the plaintiff himself testified that the value of his farm was $300 an acre before the condemnation, but that, after the condemnation, he fixed the value of the 77-acre tract lying across the railroad right of way, which tract is unimproved, at $125 an acre.  On another tract of 66 acres, on which the improvements are, he fixes the valuation after condemnation at $175 an acre.  Plaintiff then takes the 40 acres as a separate tract, and fixes the value thereof by itself at $175 an acre.  It results, therefore, that the court, in admitting this evi-

dence, permitted the jury to take into consideration the value of the separate tracts, in order to ascertain the value of the whole farm. Plaintiff's other value witnesses testified, over objection, in like manner. To avoid confusion in this particular, it may be said that a cross-examiner is privileged to enter the domain of valuation as to separate parcels of a farm. The witnesses here were being examined in chief by plaintiff's counsel as to the value of his farm by parcels.

The law of eminent domain does not contemplate that, in fixing the value of a farm, plaintiff may cut to pieces his farm, and a piecemeal valuation be taken as the basis of valuation of an entire tract before and after the condemnation. It is the value as a whole, before and after the condemnation, and not the value in parcels. The method permitted by the court allowed the jury to make calculation under an erroneous rule or measure of damage. It afforded an opportunity for the jury to speculate, and establish a fictitious damage, by reason of cutting the farm to pieces. It gave to the jury two different methods or sets of figures from which to make computation, and, therefore, two measures of damage. Welton's farm was a single farm, and so treated by both parties. Neither party claims that the 200 acres (approximately) consisted of two farms. Plaintiff was entitled to have his farm valued as a whole, and his damage assessed on that basis. This rule is expressly approved in *Lough v. Minneapolis & St. L. R. Co.*, 116 Iowa 31, wherein it is said:

"It might be that the particular tract crossed by the railroad was of little value, and a showing of this fact would tend to distract the attention of the jury from the real question, and confuse them * * *."

The *Lough* case, supra, was reversed by reason of the admission of this evidence. The error in the case at bar is obvious, since it may be stated that the damages were from $1,800 to $5,700 less, when calculated by the proper method, than when the farm was divided into separate tracts and a valuation placed on each tract. The second method permitted by the court, over objection, tended to confuse the jury. Furthermore, prejudice is presumed from the admission of incompetent evidence. We cannot approve a departure from the true rule of damages in such a case.

II. The next error relied upon is in permitting the plaintiff, over proper objections, to show, not only the number of rods of fencing he would be required to build, but the cost of such fence per rod, and the maintenance there-of. This again allowed the jury to enter the realm of speculation and conjecture. Fences are of various kinds and costs, and may or may not be needed, according to conditions. See *Henry v. Dubuque and Pac. R. Co.*, 2 Iowa (Clarke) 288. The rule announced in the *Henry* case, supra, has been followed in this jurisdiction, as an examination of a recent pronouncement of this court will show. *Dean v. State*, 211 Iowa 143. See, also, *Kosters v. Sioux County*, 195 Iowa 214, 218; *Chicago & N. W. R. Co. v. Drainage Dist. No. 5, Sac County*, 142 Iowa 607. In this connection, one item of evidence bearing on this matter may be stated: to wit, that the cost of the erection of the fence was $2.00 a rod, and that the cost of maintenance for 30 years would be 10 per cent a year. Sufficient to state that this line of evidence was incompetent.

III. The next proposition of appellant predicates error on the refusal of the court to permit the defendant to show, on cross-examination of the plaintiff Welton, the value of the land and the amount of live stock kept on it, as sworn to by him, before the assessor for certain years to 1928, inclusive. There was error here. Welton testified on direct examination as to the value of his farm immediately prior to and immediately after the condemnation in September, 1928. He also testified on direct examination as to the amount of live stock kept on the farm for a period of years prior to the condemnation. Upon cross-examination, he was examined with reference to his sworn returns to the tax assessor with reference to the value of the land and the amount of live stock kept on his farm. The plaintiff testified on direct examination that his farm was worth $58,350 immediately before the condemnation in September, 1928. He testified, over objection, that, after the condemnation, the 66 acres were worth $175 an acre, the 77 acres $125 an acre, and the 40 acres $175 an acre. He testified that for a period of years he had been an extensive stock feeder, handling, on an average, approximately 250 cattle and 500 to 550

634

hogs per year. The defendant, in an attempt to meet this testimony, questioned the plaintiff with reference to the values he had placed upon the farm for different years to 1928, inclusive, and the amount of live stock he had kept thereon, as sworn to by him before the tax assessor. Objections were interposed to this line of questions, and the objections were sustained, as well as the offer to prove the contents of the sworn tax returns. The tax returns showed that the valuation placed on the farm by the plaintiff varied from $72 to $92 per acre, varying in different years. The offer also included his sworn return for the year 1929, which showed that he placed a lower valuation on the farm than he had in 1927, the condemnation having been made in 1928. The defendant likewise offered to show that, while the plaintiff had sworn on direct examination that he had kept approximately 250 cattle and 500 hogs on his farm each year, he had sworn before the tax assessor to approximately 50 head of cattle and 50 head of hogs, the number varying in different years. Various witnesses for both parties testified that the land values were substantially the same in Mahaska County during the period of years in question.

We feel that the question here presented is not an open one in this jurisdiction. The return of value made by a property owner to the assessor may be used as proof of an admission by him. *Haggard v. Independent Sch. Dist.*, 113 Iowa 486. The *Haggard* case, supra, was not reversed, for the reason that the record did not show what value the appellee Haggard had placed upon his property in his return to the assessor. Here, the record conclusively establishes the value which appellee Welton placed on his farm in the different years involved. The weight of judicial authority is to the effect that, if the owner testifies at the trial that his land was of greater value than his return to the assessor indicates, the return can be used to contradict the testimony. See Nichols on Eminent Domain (2d Ed.) 1209; 22 Corpus Juris 305, 306, Section 343. See, also, *Western & A. R. Co. v. Tate*, 129 Ga. 526 (59 S. E. 266); *State v. Doom* (Tex. Civ. App.), 278 S. W. 255; *Dean v. County Board of Education*, 210 Ala. 256 (97 So. 741); *McCaughan v. John Hill Constr. Co.* (Mo. App.), 222 S. W. 917; *St. Louis, O. H. & C. R. Co. v. Fowler*, 142 Mo. 670 (44 S. W. 771); *Brackett v. Commonwealth*, 223 Mass. 119 (111 N. E. 1036); *Indiana Union Traction Co. v.*

*Benadum,* 42 Ind. App. 121 (83 N. E. 261); *Mifflin Bridge Co. v. County of Juniata,* 144 Pa. St. 365 (22 Atl. 896); *Donaghue v. Hayden,* 58 Cal. App. 457 (208 Pac. 1007); *Forbes v. United States,* 268 Fed. 273.

In the light of the legal principle as declared by the numerical weight of authority, we hold that the refusal of the trial court to permit the defendant to show on cross-examination the value of the plaintiff's farm as sworn to by the plaintiff before the tax assessor, and also with reference to the sworn number and value of the live stock kept on his farm, constituted error. The evidence was admissible as an admission, and competent to contradict plaintiff's testimony as to values. It did affect the credibility of the witness.

IV. It is urged that the trial court erred in refusing permission to the defendant to show, on cross-examination of plaintiff's value witnesses, the distance of plaintiff's farm from the  market and the kind of roads to such market. It is a matter of common knowledge today that one of the most vital elements affecting the value of any farm is its accessibility to market. The trial court should have permitted the defendant to test their knowledge of values, and to cross-examine them on one of the vital elements in determining the value of the farm. Evidence of the location of the property is admissible as bearing on its proximity to roads and highways and to market. *Railroad v. Land Co.,* 137 N. C. 330 (49 S. E. 350). See, also, *South Park Comm. v. Dunlevy,* 91 Ill. 49; *Ohio Valley R. & T. Co. v. Kerth,* 130 Ind. 314 (30 N. E. 298).

V. We now pass to the errors relied upon in the refusal by the court to give certain instructions requested by the defendant. These requested instructions were, in part, cautionary in character, and in part a recognition of the limitations that should be respected by the jury in the consideration of the evidence.

1. The requested instruction 3 was to the effect that it was the duty of the jury to try the cause "as though it were a cause between two individuals," and that the defendant state highway

636

 commission is entitled to be treated precisely as an individual. This court knows the feeling that has been engendered in certain localities by reason of the attempt of the Iowa state highway commission to carry out the legislative plan to create and establish paved primary highways. It is the quite universal rule recognized in various jurisdictions that, where a corporation, state board, or commission is created, with certain defined powers, said entities are entitled to be treated in a law action precisely as an individual, and that no inferences or presumptions are to be drawn or indulged against such entities that would be improper in an action between two individuals. See *City of Indianapolis v. Gaston,* 58 Ind. 224; *Lecklieder v. Chicago City R. Co.,* 172 Ill. App. 557; *Chicago & E. I. R. Co. v. Burridge,* 211 Ill. 9 (71 N. E. 838); *Hoag v. Washington-Oregon Corp.,* 75 Ore. 588 (147 Pac. 756); *Shanks v. Oregon-Washington R. & Nav. Co.,* 98 Wash. 509 (167 Pac. 1074); *Pledger v. Chicago, B. & Q. R. Co.,* 69 Neb. 456 (95 N. W. 1057); *Sepetowski v. St. Louis Transit Co.,* 102 Mo. App. 110 (76 S. W. 693). In *Chapman v. Pfarr,* 145 Iowa 196, it is held that, where it is apparent that the evidence in the case is likely to appeal strongly to the sympathy of the jurors, the court should give a cautionary instruction, directing the jury not to allow any question of sympathy or sentiment to control them.

2. Requested instruction No. 9 had to do with an admonition that the jury should not take into consideration anything which is remote or imaginary or uncertain or speculative, even  though mentioned or testified to by the witnesses, and that the only elements to be taken into consideration as tending to reduce the market value, if any, are those which are appreciable and substantial, and which will actually lessen the market value of the real estate by reason of the appropriation of same for the purpose in question. This instruction might well have been given. There is in this record a mass of evidence offered by the plaintiff and received over objection of the defendant which did deal with speculative and uncertain elements. It is the universally accepted rule that, where requested instructions state correct rules of law, and the substance of the request is not covered by the instructions given by the court on its own

motion, the requested instructions should be given. The jury should have been told that it should confine its consideration of the evidence to actual elements of damage. See *Kiernan v. Chicago, S. F. & C. R. Co.,* 123 Ill. 188 (14 N. E. 18); *Chicago, B. & Q. R. Co. v. City of Chicago,* 149 Ill. 457 (37 N. E. 78); *Chicago & A. R. Co. v. City of Pontiac,* 169 Ill. 155 (48 N. E. 485); *Simons v. Mason City & Ft. D. R. Co.,* 128 Iowa 139; *Sater v. Burlington & Mt. Pleasant Plank Road Co.,* 1 Iowa (Clarke) 386.

3. Requested instruction 10 was refused. This requested instruction told the jury that, in considering the market value of plaintiff's premises immediately before and immediately af- ter it was appropriated, as shown by the evidence, "you are to take into consideration the amount of land taken, the inconvenience, if any, with the owner's use and enjoyment of the premises, the kind and location of the real estate, productiveness, and improvements thereon, and in considering the inconveniences, if any, arising from the taking of the land for said purposes or from the use of the right of way so taken, you are not to consider such inconveniences by a wrongful or improper use of the said highway, and you cannot allow damages on account thereof, or consider such possible inconveniences as affecting the market value of plaintiff's land, but consider only such inconveniences as affect the market value of plaintiff's land, as the owner will naturally sustain by the appropriation thereof for the purposes intended and the use thereof for said purposes in a proper manner." This language is plain, and is a direction to the jury that it shall not take into consideration any inconveniences arising by reason of illegal and improper use of the highway. The instruction given did not approximately reach the matters contained in the request. For this reason, the request should not have been ignored.

4. The requested instruction 13, which was also refused, said, in substance, that the law presumes that the use and purposes for said highway will be lawful, and that, in estimating plaintiff's damages, the jury should assume that said highway will be used in a lawful manner. This court has frequently held that the jury must not allow damages for an improper or unlawful use of the highway. See *Bennett v. City of Marion,* 106 Iowa

628; *Doud v. Mason City & Ft. D. R. Co.,* 76 Iowa 438; *Kukkuk v. City of Des Moines,* 193 Iowa 444.

5. Requested instruction No. 15 pointed out the fact that a witness may be impeached by proof of contradictory statements, and that, if the jury believes that any witness has thus  been successfully impeached by making contradictory statements, then his testimony may be disregarded, unless it has been corroborated by other credible evidence. The language contained in this request has been frequently approved by this court. The rule is stated in 16 Corpus Juris 1058 and 1069.

6. It is contended by appellant that the court erred in giving Instruction No. 1 in connection with Instruction 2. In giving Instruction No. 1, the court set forth the entire contents  of plaintiff's petition, and in Instruction No. 2, the trial court said: ''Under the issues thus joined, and under the uncontradicted evidence in this case, your verdict will be for the plaintiff in some amount.'' Turning to Instruction No. 1, we find a multitude of allegations, some of which were not a part of the issues in this case. We quote a few of them: ''Plaintiff will be compelled to construct a new fence and be forever required to maintain the same.'' ''That the traffic on said highway will be so great as to render it extremely dangerous to drive plaintiff's live stock across same from one part of his farm to another, and dangerous to cross the said highway with teams, wagons, and farm implements, which plaintiff will be compelled to do in operating his said farm.'' ''That the expense of operating plaintiff's said farm will be greatly increased by reason of the extraordinary width of the right of way taken for said highway.'' ''That the value of his fruit orchard and windbreak was the sum of $2,000.'' ''That the cost of constructing and maintaining fences along the land so condemned by the reason of the taking thereof and leaving the same unfinished was the sum of $1,200.'' ''That the fair and reasonable market value of the remainder of plaintiff's farm, after deducting therefrom 11.05 acres as condemned, has been depreciated in the sum of $15,000 by reason of said condemnation and said taking.''

There is but one issue in this case, and that involves the difference in the reasonable market value between the plaintiff's

farm, taken as a whole, immediately before and immediately after the condemnation proceedings. This court said, in *West v. Averill Grocery Co.*, 109 Iowa 488, l.c. 496:

"The petition * * * was copied in the charge, and the jury was required to ascertain as best it could the issues on which the case was tried. This was confusing and erroneous. The statements contained in the pleadings were lengthy, and the real issues should have been stated more concisely, and in the language of the court."

Similar language, but more pointed, may be found in *Swanson v. Allen*, 108 Iowa 419, and therein it is said:

"Copying the pleadings into the instructions as a statement of the issues is subject to the same criticism as the use of the originals, if the jury are permitted to take these upon retirement for deliberation. * * * The rule, then, deducible from these authorities is that the court must determine from an examination of the pleadings what the issues are, and so state them to the jury as to be readily comprehended, and that setting out the pleadings in lieu thereof will not be tolerated, unless manifestly without prejudice."

See, also, *Erb v. German American Ins. Co.*, 112 Iowa 357; *Disalvo v. Chicago, R. I. & P. R. Co.*, 199 Iowa 868. The foregoing decisions settle this principle of law in this jurisdiction. It stands as a matter of fact that the putting of all these items and figures into the minds of the jurors misled and confused them, and affords an explanation for the high verdict that was returned.

It is also urged that the court erred in giving Instruction 12, in directing the jury to allow plaintiff interest from September 6, 1928, at the rate of 6 per cent, and ordering the jury to add  this interest to the verdict. The correct method to be followed is for the jury to ascertain the amount of plaintiff's damages, and if this amount is larger than the condemnation award, the court can add the interest from the date of the taking. *Beal v. Iowa State Highway Comm.*, 209 Iowa 1308. To submit the question of interest would be an assumption on the part of the court that the jury would find a larger amount than had been allowed by the condemnation jury. In brief, the tenor of Instruction 12 was

to direct the jury what to take into consideration, and not what they might take into consideration.

7. At this point, and by way of conclusion, it may be pointed out that the appellee has appealed from a refusal of the trial court to tax attorney fees in favor of counsel for plaintiff-appellee.  The trial of this cause began October 9, 1929. The verdict was returned October 25, 1929, and on the same date, judgment was duly entered on the verdict. On October 28, 1929, the plaintiff filed "motion to tax attorneys' fees as part of costs." This motion was overruled, and it is this ruling that is the provocation for the appeal by the plaintiff. It may be incidentally stated that no testimony was offered or received as to the value of the services rendered by the plaintiff's attorneys, and the only showing is contained in the affidavit attached to the plaintiff's motion aforesaid, which avers that the fair and reasonable value of the legal services performed by the two attorneys on behalf of the plaintiff "was and is the sum of $1,000."

It must be conceded that, except for authority given by statute, no recovery for attorney fees may be had. *Iowa Elec. Co. v. Scott*, 206 Iowa 1217. It is also well defined that attorney fees and expenses are not embraced within just compensation for land taken by eminent domain, and that a state may allow the recovery of an attorney's fee in special classes of proceedings, while withholding them from others. *Dohany v. Rogers*, 281 U. S. 362 (50 Sup. Ct. Rep. 299). See, also, *Nichol v. Neighbour*, 202 Iowa 406. A permitted classification of those upon whom liability for attorney fees is imposed involves the denial of their recovery to others, and therefore the instant appellee cannot object to a classification allowing attorneys' fees in condemnation proceedings brought by a corporation or company granted the power of eminent domain, and denying attorneys' fees when brought by the state. *Dohany v. Rogers*, supra.

Chapter 213, Laws of the Forty-third General Assembly, expressly provides that, "in all cases in which the state of Iowa is the applicant, no attorney fee shall be taxed." This law became effective April 18, 1929; but prior to this enactment, this court held that attorney fees are not taxable as a part of the costs in condemnation proceedings governed by the provisions of Chapter 237, Code, 1927. *Nichol v. Neighbour*, 202 Iowa 406.

Chapter 366, Code, 1927, does not apply in cases where the procedure is otherwise provided by law; and it may be observed that Chapter 237, Code, 1927, provides a complete method of procedure for the establishment, alteration, and relocation of highways, and therein is found no provision for the assessment for attorney fees as costs. The powers formerly granted to the county board of supervisors now rest with the Iowa state highway commission, in so far as primary highways are concerned. *Jenkins v. State Highway Comm.*, 205 Iowa 523; *Hoover v. Iowa State Highway Comm.*, 207 Iowa 56; *Nichol v. Neighbour*, 202 Iowa 406.

It has been held by this court that the statutes relating to the condemnation of property for general public purposes do not apply to condemnation proceedings instituted where special statutes have been provided. *Jones v. School Board*, 140 Iowa 179; *Munn v. Independent Sch. Dist.*, 188 Iowa 757.

The reason advanced by appellee on his appeal is found in the provision of Section 63, Code, 1927, which reads:

''1. The repeal of a statute does not * * * affect any right which has accrued, any duty imposed, * * * or any proceeding commenced, under or by virtue of the statute repealed.''

This provision does not apply to suits affecting the remedy. It does not protect a privilege, but only a right. No contract or vested right is here involved. *Miller v. Hageman*, 114 Iowa 195.

 The instant plaintiff is not entitled, as a matter of right, to attorney fees, and, as pointed out, they constitute no part of just compensation, as that term is judicially interpreted. We therefore hold that Chapter 213, Acts of the Forty-third General Assembly, in so far as it relates to attorney fees, is a statute remedial in character, and applicable immediately after it became

 a law to actions pending prior to its enactment, but wherein the costs have not been incurred, taxed, or assessed. Prior to its enactment, attorney fees were not taxable as part of the costs. The condemnation here involved was controlled by the provisions of Chapter 237, Code, 1927, wherein there was no provision for the assessment of attorney fees.

The trial court was correct in overruling the motion of plaintiff. It results, therefore, that on .plaintiff's appeal the ruling on the motion is affirmed, and on .defendants' appeal the cause is reversed.—*Affirmed on plaintiff's appeal; reversed on defendants' appeal.*

MORLING, C. J., and EVANS, STEVENS, and ALBERT, JJ., concur.

WAGNER, J., not participating.